Argued and submitted January 14, reversed and remanded with instructions
July 2, 2003

ESTATE OF SELMAR A. HUTCHINS,
Deceased,
*Respondent,*

*v.*

Michael S. FARGO
and John Does #1-10,
*Defendants,*

*and*

E. R. "Max" MILLS,
*Appellant.*

93CV3003; A117086

72 P3d 638

────────────

Jim Petersen argued the cause for appellant. With him on the briefs was Slothower & Petersen, PC.

Gary Hill argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

Selmar Hutchins held the vendor's interest in property in which Michael Fargo held the vendee's interest. Fargo then sold the property to appellant Max Mills, who did not maintain the required payments. After Hutchins's death, his estate obtained a judgment of foreclosure against Fargo and 10 "John Does." Mills subsequently moved for an order vacating that judgment. The trial court dismissed his motion on the ground that he "did not have standing to assert the issues he has raised." We reverse and remand.

Most of the facts are uncontested; for the purposes of this opinion we accept the trial court's findings on the disputed facts. In October 1977, Hutchins sold the property in question to Dorothy Palmer and Ruth Fargo by a land sale contract. They thereafter transferred their interest to Michael Fargo (Fargo). In 1989, Fargo conveyed his interest to Mills by a bargain and sale deed and moved to Nevada. Mills, however, did not record the deed until 1997. He continued to make payments through the same escrow account at the Douglas National Bank that Fargo had used; the bank did not change its records to reflect the conveyance from Fargo to Mills and may not have known of it.

By 1993, the payments required under the land sale contract were significantly in arrears, and, in September, Hutchins filed an action against Fargo and 10 John Does to foreclose the contract. Hutchins was unsuccessful in attempting to serve Fargo; on December 2, 1993, Hutchins died. Plaintiff became the personal representative of Hutchins's estate.[1] His attorney then filed a motion to permit service on Fargo and the 10 John Does by publication. In support of that motion, the attorney filed an affidavit stating only that "the Defendant has been sent a letter to his last known address in California; the letter has been returned, marked 'Forward Expired.'" The affidavit neither stated nor implied that the attorney had attempted to determine where Fargo had

---

[1] The caption of the case is in the name of the estate itself rather than of Selmar Hutchins II as the personal representative of the estate. *See* ORCP 34 B(1). The parties raise no issues concerning that informality. Despite the incorrect title, we refer to the personal representative, rather than the estate, as "plaintiff."

moved after leaving his address in California or to locate him in Nevada. Nonetheless, the court granted the motion for service by publication. Fargo did not appear in response, and, on September 22, 1994, the court entered a judgment by default foreclosing Fargo's (and the John Does') interests in the property.

On July 6, 2001, almost seven years after the entry of the judgment of foreclosure, Mills filed a motion to set the judgment aside. He supported it with an affidavit in which he stated, among other things, that Hutchins knew that he had acquired Fargo's interest in the property and that he was not served with the complaint in the action. He also included an affidavit from Fargo, who stated that he had lived in Redding, California, for only four months but had lived in Reno, Nevada, since 1988, that Hutchins knew that he lived in Reno, that several people in the Roseburg-Sutherlin area knew where he could be contacted, and that he had no knowledge of the foreclosure. After a hearing at which several witnesses testified, the trial court issued an order denying the motion and a letter opinion stating, in part:

"I simply don't believe [Mills] has standing to assert the issues he has raised. Generally speaking, persons may only assert their own legal rights and not those of others, *see Kelly v. Silver*, 25 Or App 441[, 549 P2d 1134, *rev den*] (1976)."

Mills appeals from the order denying his motion. ORS 19.205(2)(c).

Mills raises two issues. First, he argues that he has standing to contest the adequacy of service on Fargo. Second, he argues that service on Fargo by publication was ineffective and that the court therefore had no jurisdiction over Fargo when it entered the judgment. As a result, he contends, the judgment is void as to Fargo and as to himself because he claims through Fargo. The trial court did not reach the second issue because it concluded that Mills did not have standing to raise it. We first describe why Mills's interest in the judgment gives him standing to attack it and then explain why his attack has merit.

■ Because Mills argued that the judgment against Fargo was void for lack of personal jurisdiction, his motion to set it aside was based on ORCP 71 B(1)(d). *See Davis Wright Tremaine, LLP v. Menken*, 181 Or App 332, 336 n 3, 45 P3d 983 (2002) (argument that judgment is void necessarily implicates ORCP 71 B(1)(d)). Whether a judgment is void is a question of law; we review a ruling on such a motion for errors of law, accepting the trial court's factual findings if the evidence supports them. *See Adams and Adams*, 173 Or App 242, 245, 21 P3d 171 (2001).

■ A party has standing if, under the substantive law, it has a right to obtain an adjudication of its claims. *See Eckles v. State of Oregon*, 306 Or 380, 383, 760 P2d 846 (1988), *appeal dismissed*, 490 US 1032, 109 S Ct 1928, 104 L Ed 2d 400 (1989). At least in the absence of a statute, a party has standing to assert only its own legal rights. *See Ellis v. Municipal Reserve & Bond Co.*, 60 Or App 567, 570-71, 655 P2d 204 (1982). However, even "strangers to the record" have standing to attack a void judgment if the judgment, given effect and enforced against them, would adversely affect their rights. *State ex rel Costello v. Cottrell*, 318 Or 338, 344, 867 P2d 498 (1994) (quoting *Hughes v. Aetna Casualty Co.*, 234 Or 426, 444, 383 P2d 55 (1963)). The question, then, is whether Mills has any legal interest in the judgment foreclosing Fargo's interest in the property. It is apparent that he does.[2]

After the delivery of the deed from Fargo, Mills owned Fargo's interest in the property. However, he did not record the deed, and it therefore did not constitute constructive notice to plaintiff of his interest in the land. *See* ORS 93.640. At least in the absence of actual or constructive notice to plaintiff, Mills's interest in the property can rise no higher than Fargo's. *See Sanders v. Ulrich*, 250 Or 414, 416, 443 P2d

_____

[2] The trial court stated that Mills was not a party to the case, apparently referring to the fact that plaintiff did not name him as a defendant. Although appellant did not formally seek to become a party when he filed the motion to set aside the judgment, that was a necessary implication of the motion. On appeal, he suggests that he is a party either because he should be identified as one of the John Doe defendants or because he is entitled to be substituted for Fargo under ORCP 34 E and ORAP 8.05(1) as Fargo's successor in interest. We agree that appellant is entitled to be substituted as Fargo's successor in interest.

231 (1968); *Vista Management v. Cooper*, 81 Or App 660, 664, 726 P2d 974 (1986).[3] Thus, the judgment foreclosing Fargo's recorded interest necessarily terminated the interest that Mills gained by his unrecorded purchase of Fargo's interest. If Mills can show that the judgment is invalid, his prejudgment rights will be restored, with the added advantages that he has now recorded the deed and that plaintiff unquestionably has actual notice of his interest. Thus, the validity of the judgment directly affects Mills's legal rights; indeed, such a challenge may be the only way that he can vindicate those rights. He therefore has standing to move to set the judgment aside on the ground that it is invalid.

■ Having concluded that Mills has standing to challenge the judgment against Fargo and the John Does, we also conclude that his challenge must succeed. Mills bases his argument on the assertion that the trial court did not have personal jurisdiction over Fargo because the service by publication was invalid. We summarized the requirements for valid service by alternative means in *Huffman v. Leon De Mendoza*, 135 Or App 680, 899 P2d 734 (1995), *rev den*, 322 Or 489 (1996). An affidavit supporting a motion to allow such service " 'must contain positive averments of probative or evidentiary facts' from which a court can conclude that 'all reasonable means have been exhausted' in attempting to locate the defendant for service." *Id.* at 684 (quoting *Kintigh v. Elliott*, 280 Or 265, 270, 570 P2d 659 (1977)). The Supreme Court has suggested that possible sources for locating a defendant include the post office, the defendant's employer, utility companies, neighbors, and friends and relatives in the area. *Id.* In *Huffman*, the plaintiff attempted to serve the owner of property who had allegedly received it as the result of a fraudulent conveyance. The only information in the plaintiff's affidavit concerning the owner was that the plaintiff had checked with a person at the county assessor's office and learned that the owner had an address in San Jose,

---

[3] If Mills had recorded the deed or if, as he unsuccessfully tried to prove, plaintiff had otherwise had actual or constructive notice of his interest, then foreclosing Fargo's interest would not have affected Mills's interest. *See Seguin et al. v. Maloney-Chambers*, 198 Or 272, 285, 253 P2d 252, 256 P2d 514 (1953) (purchaser takes subject to prior rights of which purchaser has actual notice). In that situation, the trial court's decision that Mills did not have standing to attack the judgment might have greater force.

California, and that someone at the San Jose address stated that he forwarded the owner's mail to an undisclosed address. That was insufficient diligence to justify service by alternative means. *Huffman*, 135 Or App at 685.

**10.** Plaintiff's effort in this case was even less than the plaintiff's in *Huffman*. Here, plaintiff made no efforts at all after having received a single returned envelope showing that Fargo no longer lived at a particular address in California. Plaintiff's affidavit contained no indication of any additional attempt to locate Fargo. Nothing indicates that he questioned Fargo's known associates. Further, the returned envelope contained the message, "Forward Expired." That might mean that the post office will no longer forward mail without additional postage; it does not mean that the forwarding address is unknown. Plaintiff's efforts do not constitute a minimal attempt to comply with the standard that we and the Supreme Court have described. As a result, the service was ineffective, and the trial court did not have personal jurisdiction over Fargo when it entered the judgment. The judgment is void, and Mills, who stands in Fargo's shoes, is entitled to have it set aside. *See Resnik and Resnik*, 99 Or App 56, 58-59, 781 P2d 856 (1989), *rev den*, 309 Or 521 (1990) (husband entitled to have judgment set aside when trial court did not have personal jurisdiction over him).

Plaintiff argues that Mills's motion to set aside the judgment was not timely. We reject that argument because there is no timeliness requirement for moving to set aside a void judgment. ORCP 71 B(1) provides, in pertinent part:

> "On motion and upon such terms as are just, the court may relieve a party or such party's legal representative from a judgment for the following reasons: * * * (d) the judgment is void; * * *. The motion shall be made within a reasonable time, and for reasons (a), (b), and (c) not more than one year after receipt of notice by the moving party of the judgment."

Although the rule would seem both to require Mills to have filed this motion within a reasonable time after learning of the judgment and to grant the trial court discretion in acting on the motion, neither of those requirements can apply to a motion to set aside a void judgment.

In *Burt & Gordon v. Stein*, 128 Or App 350, 867 P2d 338, *rev den*, 320 Or 270 (1994), we held that it was an abuse of discretion for a trial court to refuse to set aside a void judgment. In doing so, we quoted *Black's Law Dictionary* 1412 (5th ed 1979), which defined a void judgment as

" '[o]ne which has no legal force or effect, [the] invalidity of which may be asserted by any person whose rights are affected at any time and at any place or collaterally. One which, from its inception is and forever continues to be absolutely null, without legal efficacy, ineffectual to bind parties or support a right, of no legal force and effect whatever, and incapable of confirmation, ratification, or enforcement in any manner or to any degree. One that has merely semblance without some essential elements, as want of jurisdiction or failure to serve process or have party in court.' (Citation omitted.)"

128 Or App at 354-55. Because a void judgment, as the definition indicates, is a nullity *ab initio*, all that a trial court does when it sets it aside is to give effect to its prior determination of its nullity. It does not exercise any discretion, and there cannot be any time limitations on its action.

As both the Supreme Court and this court have recognized, the source of ORCP 71 is FRCP 60. Both courts have also relied on federal cases in construing other portions of the rule. *See McCathern v. Toyota Motor Corp.*, 332 Or 59, 23 P3d 320 (2001); *Johnson v. Johnson*, 302 Or 382, 391-92, 730 P2d 1221 (1986); *Jansen v. Atiyeh*, 96 Or App 54, 59-60, 771 P2d 298 (1989). A leading treatise describes the law under FRCP 60(b)(4), which is essentially identical to ORCP 71 B(1)(d):

"Rule 60(b)(4) authorizes relief from void judgments. Necessarily a motion under this part of the rule differs markedly from motions under the other clauses of Rule 60(b). There is no question of discretion on the part of the court when a motion is under Rule 60(b)(4), nor is there any requirement, as there usually is when default judgments are attacked under Rule 60(b), that the moving party show that he has a meritorious defense. Either a judgment is void or it is valid. Determining which it is may well present a difficult question, but when that question is resolved, the court must act accordingly.

"By the same token, there is no time limit on an attack on a judgment as void. The one-year limit applicable to some Rule 60(b) motions is expressly inapplicable, and even the requirement that the motion be made within a 'reasonable time,' which seems literally to apply to motions under Rule 60(b)(4), cannot be enforced with regard to this class of motion. A void judgment cannot acquire validity because of laches on the part of the judgment debtor."

Charles Allen Wright, Arthur R. Miller, and Mary Kay Kane, 11 *Federal Practice and Procedure* § 2862 (2d ed 1995) (footnotes omitted).

Those federal law principles are consistent both with the nature of a void judgment and with our previous cases under ORCP 71 B(1)(d). We believe that they accurately state Oregon law on the subject. In short, the reasonable time to move to set aside a void judgment is forever, and it is an abuse of discretion for a trial court to fail to do so. The trial court erred by not setting aside the judgment.

Reversed and remanded with instructions to set aside judgment.