On court's order to show cause filed September 14; appellant's response - order to show cause why appeal should not be dismissed filed October 5; plaintiffs-respondents' reply—order to show cause why appeal should not be dismissed filed October 19; defendant-respondent DCNAH's reply to the State of Oregon's response to the court's order to show cause why the appeal should not be dismissed filed October 19; and defendants-respondents' reply— order to show cause why appeal should not be dismissed filed October 19, 2007, determination of standing made; appeal to proceed February 20, 2008. Both petitions for review allowed July 2, 2008 (345 Or 94)

MAN AKTIENGESELLSCHAFT
and MAN Nutzfahrzeuge Aktiengesellschaft,
*Plaintiffs-Respondents,*
*and*

ERF LIMITED,
ERF (Holdings) PLC,
and MAN ERF UK Limited,
*Plaintiffs,*
*and*

OREGON DEPARTMENT OF JUSTICE,
*Plaintiff-Appellant*
*Cross-Respondent,*

*v.*

DAIMLERCHRYSLER AG
and Freightliner of Canada Ltd,
*Defendants,*
*and*

FREIGHTLINER LLC,
Freightliner Limited, Freightliner Canada Ltd,
Freightliner Holding Ltd,
Freightliner Netherlands BV,
and DaimlerChrysler North American Holding Corporation,
*Defendants-Respondents*
*Cross-Appellants,*
*and*

DAIMLERCHRYSLER NORTH AMERICAN
FINANCE CORPORATION,
*Defendant-Respondent.*

Multnomah County Circuit Court
041213050; A135989

179 P3d 675

Janet M. Schroer and Hoffman, Hart & Wagner LLP; Charles F. Adams, Beverly C. Pearman, Amy Edwards, and Stoel Rives LLP; and Stephen S. Walters and Allen Matkins, Leck, Mallory, Gamble & Natsis LLP for motion.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Rolf C. Moan, Assistant Attorney General, *contra*.

Before Schuman, Presiding Judge, and Brewer, Chief Judge, and Rosenblum, Judge.

BREWER, C. J.

.

## BREWER, C. J.

The state is not a party to the underlying dispute between plaintiffs and defendants in this case but asserts that it has an interest under ORS 31.735 in the jury's award of punitive damages. The state has appealed from a supplemental judgment dismissing the case that the trial court entered as part of a settlement between plaintiffs and defendants. As part of entering the supplemental judgment, the trial court vacated the general judgment that it had previously entered, in which the state was a judgment creditor as to 60 percent of the jury's award of punitive damages to plaintiffs. On our own motion, we questioned whether the state has standing to appeal the supplemental judgment and therefore issued an order requiring it to show cause why we should not dismiss the appeal. We now conclude that the state has standing to assert its rights under ORS 31.735 and therefore order that the appeal shall proceed.

We described the relevant facts in our order to show cause:

"Under the vacated general judgment, the state would have been entitled to 60% of the $350 million in punitive damages awarded, $70 million against [defendant] Freightliner, LLC, and $280 million against [defendant] DaimlerChrysler, with the state listed as a judgment creditor as required by ORS 31.735. After entry of the general judgment, the state signed a stipulated order staying enforcement of the judgment based on a stipulated motion to stay enforcement of the general judgment prepared by the defendants. The stay order was entered on April 9, 2007. Shortly thereafter, defendants Freightliner and DaimlerChrysler filed a 'motion for judgment notwithstanding the verdict and remittitur, or, in the alternative, new trial.' Defendant DaimlerChrysler North America Holding Company ('DNAHC') filed an identical motion separately. In the accompanying memoranda, defendants argued that the evidence was insufficient to support the punitive damages awarded in the general judgment, and that punitive damages were not available as a matter of law.

"Although plaintiffs initially filed responses to the motions on April 30, 2007, they notified the trial court on

May 29, 2007, that they were withdrawing those objections, and then entered into a settlement agreement in which defendants agreed to pay plaintiffs approximately 270 million pounds sterling in damages, none of which would be classified as punitive damages. Assistant Attorney General Fred Ruby participated in a telephone status conference on May 30, 2007, to express the state's objections to the settlement agreement because it eliminated all of the punitive damages to which the state would have been entitled under the general judgment. The judge permitted the state to file formal written objections and a 'complaint in intervention' at Ruby's request. However, on June 1, 2007, the trial court denied the state's motion to intervene, and issued an order granting defendants' motions. On June 14, 2007, the trial court entered the supplemental judgment memorializing the settlement agreement. The state has appealed that supplemental judgment."

ORS 31.735 (*former* ORS 18.540)[1] provides that 60 percent of an award of punitive damages shall be paid to the Criminal Injuries Compensation Account. The Department of Justice becomes a judgment creditor as to that portion of the award upon entry of a verdict that includes an award of punitive damages. ORS 31.735(1). The state asserts that ORS 31.735 gives it rights to a portion of the jury's verdict that the parties to the underlying dispute cannot disregard without the state's agreement. In that respect, the state seeks to protect its rights in a case where it is not a party to the underlying dispute. The question before us at this time is not whether the state is correct but whether it has standing to assert that position by appealing a judgment that did not recognize the state's asserted rights and that replaced a judgment that did.

" 'Standing' is a legal term that identifies whether a party to a legal proceeding possesses a status or qualification necessary for the assertion, enforcement, or adjudication of legal rights or duties." *Kellas v. Dept. of Corrections*, 341 Or 471, 476-77, 145 P3d 139 (2006). The decisive issue for standing, thus, is not whether a party's claims are correct but whether the party may obtain a judicial determination of their correctness. As the Supreme Court held in *Kellas*, the

---

[1] In 2003 Legislative Counsel renumbered *former* ORS 18.540 as ORS 31.735.

legislature may expressly prescribe criteria for standing in particular cases. *Id.* at 477. However, where, as here, the legislature has not expressly done so, we will examine the text of the statute in context, including previous versions of the same statute, to determine the legislature's intent. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993); *Kellas*, 341 Or at 477; *see Local No. 290 v. Dept. of Environ. Quality*, 323 Or 559, 567, 919 P2d 1168 (1996) (applying *PGE* template to statutory standing analysis).[2]

In *Eulrich v. Snap-On Tools Corp.*, 103 Or App 610, 798 P2d 715 (1990), we considered the state's substantive rights under an earlier version of the statute, ORS 18.540 (1989).[3] That version of the statute granted the state a right to a share of an award of punitive damages only when there was an actual fund to distribute, not at the time of the verdict or of the judgment. In *Eulrich*, the plaintiffs won a substantial judgment for punitive damages. After the verdict, the trial court granted the state's motion to intervene for the purpose of securing the portion to which *former* ORS 18.540 entitled it. The trial court, however, took no action on the state's substantive claim after granting the state's motion to intervene, and the judgment did not refer to the state. The statute at the time did not expressly require it to do so.

The defendants appealed and then moved for a determination of the appealability of the judgment, questioning whether the judgment was final because of the failure to include the state as a judgment creditor. We held that the judgment in *Eulrich* was final and appealable. At the time,

---

[2] However, in *Local No. 290*, 323 Or at 566, the court emphasized that "it is important that courts not interpret the contours of standing in a particular case by looking at other statutes that confer standing in different circumstances."

[3] ORS 18.540 (1989) provided:

"The punitive damage portion of an award shall be distributed as follows:

"(1) The attorney for the prevailing party shall be paid the amount agreed upon between the attorney and the prevailing party.

"(2) One-half of the remainder shall be paid to the prevailing party.

"(3) One-half of the remainder shall be paid to the Criminal Injuries Compensation Account to be used for the purposes set forth in ORS chapter 147. However, if the prevailing party is a public entity, the amount otherwise payable to the Criminal Injuries Compensation Account shall be paid to the general fund of the public entity."

*former* ORS 18.540 provided that the "punitive damage portion of an award shall be distributed" according to a formula that the statute described, including one-half to the Criminal Injuries Compensation Account. The statute did not give the state any rights in the judgment itself. *Eulrich,* 103 Or App at 612. We held that the state was not a party and could not have stated a claim in intervention

> "because it had no interest in, or knowledge of, the case beyond its entirely contingent right under ORS 18.540 to a portion of whatever punitive damages might eventually be *distributed.* Because the state's right under ORS 18.540 *is* triggered only when a fund capable of distribution exists, the state may not interfere in the actual prosecution of the action. The state, therefore, has presented no claim that requires trial court disposition before this appeal may proceed."

*Id.* at 613 (emphasis in original).

In *Eulrich,* we did not expressly decide whether the state had standing or whether the trial court's decision to permit it to intervene was correct; we held only that the claim that the state attempted to assert by its motion to intervene failed. However, *Eulrich* would support the conclusion that the trial court in that case erred in granting the motion to intervene because the state was without standing to pursue its claim. When a court grants a motion to intervene, the intervenor becomes as much a party to the case as are the original parties. ORCP 33 A; *Schlumberger Technologies, Inc. v. Tri-Met,* 149 Or App 316, 321, 942 P2d 862, *rev den,* 325 Or 80 (1997). Thus, the failure to refer to the state's claims in the final judgment without satisfying the requirements of *former* ORCP 67 B (*amended by* Or Laws 2003, ch 576, § 90) normally would have meant that the judgment was not final because it did not resolve the claims of all parties. *See generally May v. Josephine Memorial Hospital,* 297 Or 525, 686 P2d 1015 (1984). Our holding that the state's complaint in intervention failed to state a claim ordinarily would be a ground for entering judgment against the state, not for ignoring its presence in the case. We thus may have implicitly held that the trial court erred in permitting the intervention; the most obvious reason for that implicit holding is that the state

did not have standing. We will assume that *Eulrich* stands for that proposition.

After our decision in *Eulrich*, the legislature twice amended *former* ORS 18.540 in ways that responded to our holding that the state's interest in a share of an award of punitive damages did not arise until there was a fund of money to distribute. In 1991, the first legislative session after *Eulrich*, the legislature added an introductory statement to subsection (1) that provided, "[u]pon the entry of a judgment including an award of punitive damages, the Department of Justice shall become a judgment creditor as to the punitive damages portion of the award to which the Criminal Injuries Compensation Account is entitled * * *." Or Laws 1991, ch 862, § 1. The legislature also added a new subsection (2) that provided that the "party preparing the proposed judgment shall assure that the judgment identifies the judgment creditors specified in subsection (1) of this section." *Id*. The legislature also enacted subsections (4) and (5), which provide:

"(4) Whenever a judgment includes both compensatory and punitive damages, any payment on the judgment by or on behalf of any defendant, whether voluntary or by execution or otherwise, shall be applied first to compensatory damages, costs and court-awarded attorney fees awarded against that defendant and then to punitive damages awarded against that defendant *unless all affected parties, including the Department of Justice*, expressly agree otherwise, or unless that application is contrary to the express terms of the judgment.

"(5) Whenever any judgment creditor of a judgment which includes punitive damages governed by this section receives any payment on the judgment by or on behalf of any defendant, the judgment creditor receiving the payment shall notify the attorneys for the other judgment creditors and all sums collected shall be applied as required by subsections (1) and (4) of this section, *unless all affected parties, including the Department of Justice*, expressly agree otherwise, or unless that application is contrary to the express terms of the judgment."

*Id.* (emphases added). In 1995, the legislature further amended subsection (1) so that it now provides that the Department of Justice shall become a judgment creditor "[u]pon the entry of a verdict including an award of punitive damages." Or Laws 1995, ch 688, § 1.

The state argues that the effect of those changes is to give it a vested interest in an award of punitive damages immediately upon entry of the verdict. That vested interest, it says, contrasts with the situation in *Eulrich* because the state now has enforceable rights before there is an actual fund to distribute. The state relies both on the wording of the statute and on legislative history that indicates that one purpose of the changes was to prevent the parties from settling a punitive damages case after verdict but before judgment in a way that would deny the state its statutory share of the award.

We agree with the state that the wording of the statute and its legislative history demonstrate that the legislature intended that the state have standing to enforce its interest in an award of punitive damages. Both the text and the legislative history of the 1991 and 1995 amendments to the statute show that *Eulrich* no longer controls that issue. After the 1991 amendments were enacted, upon entry of a judgment designating it as a judgment creditor, the state can seek to enforce the judgment directly by execution, garnishment, or other means without waiting for the defendant to provide a fund capable of distribution. *See* ORS 18.150 (judgment creates lien); ORS 18.252 to 18.270 (enforcement by execution); ORS 18.600 to 18.857 (enforcement by garnishment). Its interest in such circumstances is not contingent as it was in *Eulrich* but, rather, was vested, subject to defendants' right to attack the legal validity of the award of punitive damages by post-trial motions or on appeal. Indeed, defendants recognized that interest when they asked the state to agree to the stipulated motion and order staying enforcement of the judgment.

In light of the fact that the legislature so clearly conferred on the state such substantial rights, it seems to us to follow that the legislature intended that the state have the

authority to enforce those rights in court. In other words, the legislature conferred standing on the state, if not explicitly, then certainly implicitly.[4]

That understanding comports with case law pertaining to the standing of a third party to challenge the validity of a judgment. In *Estate of Selmar A. Hutchins v. Fargo*, 188 Or App 462, 466, 72 P3d 638 (2003), Mills, a person who was not a party to a judgment, sought to attack the validity of that judgment, asserting that the judgment affected his rights. Mills had purchased Fargo's vendee's interest in a parcel of real property but had failed to record the deed conveying Fargo's interest to him. Mills continued to make payments through the same escrow agent that Fargo had used. He was unable to prove that the vendor knew of the transfer, and it was at least questionable whether the escrow agent did. When the account fell into arrears, the vendor filed an action against Fargo, served him by publication, and received a default judgment foreclosing Fargo's interest in the property. The vendor did not serve Mills. Some years later Mills moved to set aside the judgment as void, arguing that the service on Fargo was inadequate. *Id.* at 464-65.

The first question that we considered was whether Mills had standing to challenge the judgment against Fargo. We noted that a party has standing if, under the substantive law, it has a right to obtain an adjudication of its claims. In the absence of a statute conferring standing, a party normally has standing to assert only its own rights. However, strangers to the record may have standing to attack a judgment if giving effect to that judgment would adversely affect their rights. Because Mills's interest in the property was no greater than Fargo's, the judgment against Fargo necessarily

---

[4] The legislative history of ORS 31.735 reinforces that textual analysis. The Oregon Department of Justice requested the 1991 amendments to that statute in response to *Eulrich*. In remarks to the House Judiciary Committee, then-Attorney General Frohnmayer stated:

"Mr. Chairman, the case to which you may be referring is [*Eulrich*], a case decided in 1990 by the Court of Appeals * * * that effectively precludes us from intervening in a potential punitive damages case which is why we submit to the committee proposed legislation so that it would be clear that the state has an interest in a legitimate punitive damages award at the time that it is given."

Tape Recording, House Committee on Judiciary, HB 3524, Mar 27, 1991, Tape 71, Side A, 239 (statement of Dave Frohnmayer).

terminated Mills's interest. If Mills could show that the judgment was void, his prejudgment rights would be restored. As a result, the validity of the judgment directly affected Mills's rights, and he had standing to challenge it.[5] We decided the issue of Mills's standing to challenge the judgment before considering the merits of the case. The issue, so far as standing was involved, was whether Mills could assert his alleged rights, not whether the judgment in fact was void. *Id.* at 466-67. We considered that substantive issue separately, deciding it in favor of Mills. *Id.* at 470.

Although there are significant differences between *Estate of Selmar A. Hutchins* and this case, they are fundamentally similar in that each involves an entity that was not a party to the underlying dispute but whose rights are directly affected by the judgment. In each case, the question is whether that effect is sufficient to grant standing to the nonparty, and in each case, the answer is that it is sufficient.

After the enactment of the 1995 amendments to the statute, the state's standing in the present circumstances was even further solidified. As discussed, the text of the 1995 version of the statute provides that the state's interest in an award of punitive damages now arises with the entry of the verdict rather than on the later entry of judgment. It is not entirely clear what it means for the state to be a "judgment creditor" before the entry of a judgment, but it is certain that the legislature intended the state to have a vested interest in an award of punitive damages immediately upon the entry of a verdict.

In considering the proposed 1995 amendments, the Senate Judiciary Subcommittee on Civil Process was informed that, under ORS 18.540 (1991), post-verdict settlements often were undermining the state's ability to collect its share of punitive damage awards.[6] Senator Randy Miller commented:

---

[5] We noted that Mills might not have had standing if he had recorded the deed or if he had proved that the vendor had actual or constructive knowledge of the transfer; in those circumstances foreclosing Fargo's interest would not have affected Mills's rights in the property. *Estate of Selmar A. Hutchins*, 188 Or App at 467 n 3.

[6] The state has presented the legislative history to us, and we may consider it. ORS 174.020. Defendants argue that the legislative history is of little value because it includes the testimony of nonlegislators at committee hearings. *See*

"I heard Attorney General Kulongoski describe that in some situations after a verdict is reached that maybe the parties go back and rework the settlement * * *. The state's interest in these awards sometimes is defeated by some maneuvering that seems to enrich and maybe even more than—windfall might be kind of a gentle phrase to describe the activity but it seems like maybe the plaintiff and their lawyer come out a lot better than perhaps they should."

Tape Recording, Senate Judiciary Subcommittee on Civil Process, SB 482, Feb 27, 1995, Tape 28, Side A (statement of Randy Miller).

John DiLorenzo, a representative of the bill's sponsor, explained that, under current law,

"[t]he Attorney General's right does not vest until after the judgment is entered. And so if the parties are smart and if there is a large punitive damages award entered, the parties will sit down and construct a * * * settlement which will provide that no final judgment will be awarded or that they will stipulate to a final judgment that will provide an award of general damages of a certain amount. And parties do that quite often, by the way, because they like to avoid the expense of appeal potentially. But they can under the present statute in essence cut out the Attorney General from that portion of the award because again, the Attorney General does not have the right to intervene until the judgment is entered."

Tape Recording, Senate Judiciary Subcommittee on Civil Process, SB 482, Feb 27, 1995, Tape 28, Side A (statement of John DiLorenzo).

In short, the text of the statute and its legislative history demonstrate that, because the state was a judgment creditor both on the entry of the jury's verdict and when a general judgment was entered on that verdict, the state has standing to appeal from the supplemental judgment that vacated the general judgment and the underlying verdict.

---

*State v. Guzek*, 322 Or 245, 260, 906 P2d 272 (1995). Although *Guzek* questions the consideration of committee testimony in some situations, it does not forbid its use. We have often found the testimony of sponsors and supporters of legislation to be helpful in determining the legislature's intent. *See, e.g., Lane County School Dist. 4J v. OSAA*, 212 Or App 373, 388-91, 157 P3d 1241 (2007); *State v. Barnes*, 209 Or App 332, 339, 147 P3d 936 (2006), *rev den*, 342 Or 256 (2007). The weight to give the legislative history in this case is a matter for the decision on the merits.

Defendants protest that the state failed to appeal from the order denying its motion to intervene and that, as a result, it cannot obtain party status by this appeal. Irrespective of its merits, that argument is not relevant as to the state's standing. An order denying a motion to intervene is appealable immediately. ORS 19.205(2); *Samuels v. Hubbard*, 71 Or App 481, 484-85, 692 P2d 700 (1984), *rev den*, 299 Or 118 (1985). The trial court entered the order denying the motion to intervene on June 1, 2007. It entered the supplemental judgment dismissing the case on June 14, 2007. The state appealed from the supplemental judgment on June 15, 2007. In its notice of appeal, the state stated that it intended to rely, in part, on the trial court's denial of an order memorializing the state's party status and its denial of the state's motion to intervene. However, the state did not expressly appeal from those orders or attach them to the notice of appeal, although doing so would have been timely. The state's status as a judgment creditor, however, is independent of its status as a potential intervenor.

"Intervention takes place when a third person is permitted to become a party to an action between other persons," by joining the plaintiff's claims, by uniting with the defendant to resist the plaintiff, or by demanding something adverse to both the plaintiff and the defendant. ORCP 33 A. Both intervention of right and permissive intervention may occur at "any time before trial." ORCP 33 B, C.[7] "[O]nce a motion for intervention is allowed, the intervenor is as much a party to the proceeding as are the original parties and is subject to the same rights and liabilities as if it had been an original party * * *." *Schlumberger Technologies, Inc.*, 149 Or App at 321. Intervention thus involves full participation in the case; the requirement that it occur before trial indicates as much. It is based on the intervenor's involvement in the underlying dispute between the parties and on its assertion of a claim against one or both of them.

---

[7] In this respect, ORCP 33 is different from FRCP 24(a) and (b)(1), which permit intervention "[o]n timely motion" without express restriction to the period before trial. The Oregon federal court has recognized the state's right to intervene under the federal rule after the verdict in order to assert its rights under ORS 31.735. *See DeMendoza v. Huffman*, 334 Or 425, 432, 51 P3d 1232 (2002).

The state's rights under ORS 31.735 are different from the rights that ORCP 33 contemplates as the basis for intervention. The state had no interest in the underlying dispute between the parties and does not assert a claim against either. For that reason, it could not have intervened before the trial. Rather, the state's interest arose at the very end of the trial, when the court entered the jury's verdict. Beginning at that time, it had a vested right to 60 percent of the jury's award of punitive damages, subject to any legal challenges to that award. It was not necessary for the state to become a full party to the case in order to protect that right; its status as a judgment creditor, which gives it the ability to enforce the judgment, is sufficient protection.[8] *See DeMendoza v. Huffman*, 334 Or 425, 431-32, 51 P3d 1232 (2002) (*former* ORS 18.540 gave state substantive right as judgment creditor to 60 percent of punitive damages award; right exists whether or not federal court lists state as judgment creditor).

To summarize: Before the trial court vacated the original general judgment and entered the supplemental judgment from which the state appeals, the state was a judgment creditor as to 60 percent of $350 million, or $210 million, subject only to defendants' challenges to the legal validity of the jury's award. Thus, the state can argue that it, not plaintiffs, owned that portion of the punitive damages award. After the trial court set aside the general judgment and dismissed the case, the jury's award of punitive damages disappeared, without a ruling on the legality of that award. If the state is correct on the merits, the court thereby permitted plaintiffs, for their own benefit, to bargain away the state's interest in the punitive damages award without any determination that that award was legally vulnerable. If the trial court's actions in implementing the parties' settlement were erroneous, the state has suffered a substantial loss. It has standing to challenge those actions.[9]

Determination of standing made; appeal to proceed.

---

[8] The Ninth Circuit has reached a similar conclusion about the effect of ORS 31.735. *See Engquist v. Oregon Dept. of Agriculture*, 478 F3d 985, 1001 (9th Cir 2007), *cert granted*, ____ US ____, 128 S Ct 977 (2008).

[9] Defendants raise other issues, such as judicial estoppel, that go to the merits of the state's position, not to its standing. We therefore do not consider those issues at this time.