**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JAMES PATTON,
     *Plaintiff-Appellee,*

v.

TARGET CORPORATION,
     *Defendant-Appellee,*

v.

STATE OF OREGON,
     *Plaintiff-Intervenor-Appellant.*

No. 08-35177

DC No.
03-CV-1722 BR

ORDER
CERTIFYING
QUESTION TO
THE SUPREME
COURT OF
OREGON

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Argued and Submitted
July 6, 2009—Portland, Oregon
Submission Vacated and Question Certified:
September 2, 2009

Filed September 2, 2009

Before: Harry Pregerson, Pamela Ann Rymer, and
A. Wallace Tashima, Circuit Judges.

---

## COUNSEL

Lori Irish Bauman, Ater Wynne LLP, Portland, Oregon, for
the plaintiff-appellee.

Michael A. Griffin, Jackson Lewis LLP, Seattle, Washington,
for the defendant-appellee.

Rolf C. Moan, Supreme Court Coordinator, Office of Attorney General, Salem, Oregon, for the plaintiff-intervenor-appellant.

---

### ORDER

Under Oregon's split-recovery statute, OR. REV. STAT. § 31.735, the State of Oregon (the "State") is entitled to 60 percent of any punitive damages awarded under Oregon law. The statute applies to cases decided under Oregon law in federal court. *DeMendoza v. Huffman*, 51 P.3d 1232, 1235-37 (Or. 2002). In the case at bench, after the jury awarded a substantial amount of punitive damages, but before judgment was entered on the award, plaintiff and defendant settled the case for an undisclosed amount, without notice to or approval of the State. The State contends that the district court erred in approving the settlement and entering judgment in accordance with the settlement because the State's consent was required for any settlement that would reduce or eliminate the State's share of the punitive damages awarded by the verdict.

Because the interpretation of this facet of the split-recovery statute is an important and unanswered question of Oregon law that is dispositive in this case, we respectfully certify a question to the Supreme Court of Oregon.

### BACKGROUND[1]

### I.  *Factual and Procedural History*

Plaintiff-Appellee James Patton ("Patton") sued Defendant-Appellee Target Corp. ("Target") in federal district court for asserted violations of the Uniformed Services Employment

---

[1]This "Background" section constitutes our statement of the relevant facts and explanation of the "nature of the controversy in which the question[ ] arose." OR. REV. STAT. § 28.210.

and Reemployment Rights Act ("USERRA"), 38 U.S.C. §§ 4301-4335, and for wrongful discharge under Oregon law. Patton alleged that Target demoted and later fired him because of his service in the National Guard. The jury found in Target's favor on the USERRA claim, but found in Patton's favor on the state law claim. It awarded Patton $17,950 in economic damages, $67,000 in noneconomic damages, and $900,000 in punitive damages.

The district court indicated that it expected a substantial post-verdict dispute between the parties regarding the validity and amount of the punitive damages award. Shortly after the verdict, however, Patton and Target reached a settlement and jointly moved the court to approve a stipulated judgment dismissing the case. Neither the motion nor the stipulated judgment disclosed how much Target had agreed to pay Patton in exchange for the dismissal, nor was any provision for any payment to the State included in the settlement.[2]

The State then moved to intervene in the case, arguing that, under the split-recovery statute, it had obtained a vested interest in 60 percent of the punitive damages award upon the entry of the verdict. It further argued that the parties could not settle the case without its consent. The district court allowed the State to intervene, but ultimately approved the proposed settlement and denied the State's claim. The district court reasoned that the State could not have obtained a vested interest in the punitive damages award prior to the entry of a judgment and that the parties were therefore free to settle the case without the State's involvement or consent. The State filed a motion for relief from the district court's judgment on the ground that the Oregon Court of Appeals' newly-announced decision in *MAN Aktiengesellschaft v. DaimlerChrysler AG*

---

[2]The structure and amount of the settlement has not been entered into the record and we are not privy to the actual terms of the settlement. But the State's position that it has been excluded from the settlement is uncontested.

("*MAN AG*"), 179 P.3d 675 (Or. Ct. App. 2008), undermined the district court's reasoning. Upon reconsideration, however, the district court affirmed its decision denying the State's motion for relief from the judgment of dismissal. This appeal followed.

## II.   *The Split-Recovery Statute*

Since 1987, Oregon has had a split-recovery statute entitling the State to receive a portion of any punitive damages awarded under Oregon law. As originally enacted, the statute provided:

> The punitive damage portion of an award shall be distributed as follows:
>
>> (1) The attorney for the prevailing party shall be paid the amount agreed upon between the attorney and the prevailing party.
>>
>> (2) One-half of the remainder shall be paid to the prevailing party.
>>
>> (3) One-half of the remainder shall be paid to [a state fund to compensate crime victims].

OR. REV. STAT. § 18.540 (1987). The weakness of the original version of the statute was exposed in *Eulrich v. Snap-On Tools Corp.*, 798 P.2d 715 (Or. Ct. App. 1990). In that case, the Oregon Court of Appeals held that the State had no interest in an award of punitive damages until a fund capable of distribution existed; thus, that the State could not state a claim in intervention to ensure that the judgment provided for the State's share of an award. *Id.* at 716.

The Oregon Legislature responded in 1991 by amending the statute to provide that, "[u]pon the entry of a judgment

including an award of punitive damages, the Department of Justice shall become a judgment creditor as to the punitive damages portion of the award to which the Criminal Injuries Compensation Account is entitled." OR. REV. STAT. § 18.540(1) (1991). The legislature soon came to believe, however, that even this new version was insufficient to protect the State's interest. According to the legislative history cited in *MAN AG*, the legislature was concerned that the new statute left a loophole between the time when a jury verdict for punitive damages was entered, and the memorialization of that verdict in a final judgment by the court. During this period, clever litigants could settle their claims and deprive the State of its share of the punitive damages award. *See* 179 P.3d at 680-81.

This case, in which the jury awarded the plaintiff $900,000 in punitive damages, is a good example of what the legislature feared could happen.[3] Here, the State would be entitled to 60 percent, or $540,000, of that award, while the plaintiff would receive the remaining $360,000. Instead of allowing judgment to be entered on these terms, the parties could, pursuant to a confidential settlement, stipulate to the entry of a judgment dismissing the case without an award of punitive damages. Because no "judgment including an award of punitive damages" would be entered, the State would not become a judgment creditor under the 1991 version of the statute and would have no claim on any proceeds from the suit. A settlement for any amount greater than $360,000 but less than $900,000 would allow the plaintiff to receive more, and the defendant to pay less, than under the jury verdict.[4] The State, of course, would be left holding an empty bag.

---

[3]In order to simplify the arithmetic, this example does not take into account the jury's award of about $84,950 in non-punitive damages, to which the State has no claim under the split-recovery statute.

[4]If the plaintiff believed that even $360,000 would not withstand judicial scrutiny under *BMW of North America v. Gore*, 517 U.S. 559, 574-85 (1996), he presumably would settle for a lesser amount. *See Parrott v. Carr Chevrolet, Inc.*, 17 P.3d 473 (Or. 2001) (setting forth scope and method of judicial review of punitive damages verdicts after *Gore* and OR. REV. STAT. § 18. 537).

In the hope of preventing this type of situation, the legislature amended the statute yet again in 1995. Under this amendment, the State would become a "judgment creditor," not upon the entry of a judgment, but "upon the entry of a *verdict* including an award of punitive damages." OR. REV. STAT. § 18.540(1) (1995) (emphasis added) (enacted as 1995 OR. LAWS ch. 688 § 1). The statute, in its current form, provides:

> Upon the entry of a verdict including an award of punitive damages, the Department of Justice shall become a judgment creditor as to the punitive damages portion of the award to which the Criminal Injuries Compensation Account is entitled pursuant to paragraph (b) of this subsection, and the punitive damage portion of an award shall be allocated as follows:
>
>> (a) Forty percent shall be paid to the prevailing party. . . .
>>
>> (b) Sixty percent shall be paid to the Criminal Injuries Compensation Account of the Department of Justice Crime Victims' Assistance Section . . . .

OR. REV. STAT. § 31.735(1).[5]

But, if the basic intent of the legislature in amending the statute was to prevent litigants from using post-verdict settlements to deprive the State of its share of punitive damages, it is not clear that the text of the statute embodies that intent. In particular, it is not easy to see what it means for the State to become a judgment creditor upon the entry of a verdict, before a court has entered a final judgment in a case.

---

[5]The statute was amended again in 1997 in ways not relevant to this case. *See* 1997 OR. LAWS ch. 73 § 1. In 2003, the former OR. REV. STAT. § 18.540 was renumbered as § 31.735.

Although the Oregon Revised Statutes do not define "judgment creditor," the statutes refer to judgment creditors in several provisions apart from the split-recovery statute and, in each of these instances, the concept of "judgment creditor" appears inseparable from the existence of a judgment. Thus, a "judgment remedy" is the "ability of a judgment creditor to enforce a judgment through execution." OR. REV. STAT. § 18.005(11). In the section of the statute dealing with enforcement of judgments, "[n]othing in [the relevant sections of the statute] affects the ability of a judgment creditor to enforce a judgment by means other than execution." *Id.* § 18.252(4). The entire apparatus is built on the idea of judgment creditors enforcing their rights, usually by means of execution, "upon the entry of the judgment." *Id.* § 18.252(1). This is in conformity with the generally accepted definition of "judgment creditor." *See, e.g.*, *Black's Law Dictionary* 921 (9th ed. 2009) ("A person having a legal right to enforce execution of a judgment for a specific sum of money.").

Thus, under one reasonable interpretation of the statute, the State cannot be a judgment creditor prior to the entry of a judgment, as that term is normally understood. Even the State concedes that, until a judgment is entered, the State lacks the most basic power of a judgment creditor: it cannot enforce its right to recovery by execution. To hold otherwise would allow the State to short-circuit the judicial process and attempt to recover money before a final judgment[6] affirming that it was entitled to the funds. Nevertheless, we cannot conclude, as did the district court, that the State does not obtain *any* right as a judgment creditor under the statute prior to the entry of a judgment. In so holding, the district court essentially rendered the 1995 amendment meaningless. This violates one of the most basic principles of statutory interpretation, which the Oregon legislature has codified:

---

[6]The Oregon statute defines "judgment" as "the concluding decision of a court on one or more requests for relief in one or more actions, as reflected in the judgment document." OR. REV. STAT. § 18.005(8).

> [i]n the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all.

OR. REV. STAT. § 174.010. The proper interpretation of the statute requires a court to find some meaning in the legislature's paradoxical decision to make the State a judgment creditor without a judgment.

No Oregon case has interpreted this aspect of the statute. The case that comes the closest, *MAN AG*, is of only limited assistance in resolving this problem. In *MAN AG*, the trial court entered a judgment including an award of punitive damages, but then approved a settlement between the parties and entered a supplemental judgment that did away with the punitive damages. 179 P.3d at 676. The State intervened, arguing that the court could not approve a settlement that would deprive the State of its portion of the punitive damages. *Id.* The Oregon Court of Appeals did not reach the merits of the State's claim, but held that the State had standing to intervene in the suit. *Id.* The court stated that, from the point "when the court entered the jury's verdict," the State

> had *a vested right* to 60 percent of the jury's award of punitive damages, subject to any legal challenges to that award. It was not necessary for the state to become a full party to the case in order to protect that right; its status as a judgment creditor, which gives it the ability to enforce the judgment, is sufficient protection.

*Id.* at 681 (emphasis added).

The State contends that this "vested right" to the punitive damages it obtained upon rendition of the jury's verdict was

sufficient to give it veto power over any subsequent settlement that would deprive it of its portion of the punitive damages. In the State's view, it had a claim to the proceeds of a judgment as strong as the plaintiff's, and it was therefore a necessary party to any settlement.

We are not convinced that *MAN AG* extends as far as the State suggests.[7] In *MAN AG*, unlike the current case, the trial court had memorialized the award of punitive damages in a judgment before the parties reached a settlement. *See id.* at 676. Under Oregon law, a right to recovery becomes vested only when it is final: "The first and essential quality of [ ] a judgment or decree [which gives to it the effect of a vested right] is that it be a final determination of the rights of the parties." *State ex rel. Weingart v. Kiessenbeck*, 114 P.2d 147, 149 (Or. 1941). This was the basis for the Oregon Supreme Court's holding in *DeMendoza*, 51 P.3d at 1245-46, that the split-recovery statute did not represent an illegal taking: because no plaintiff had a vested interest in a judgment whose value was retroactively reduced by the statute, the implementation of the split-recovery statute did not effect an illegal taking. If the Oregon Legislature "intended the state to have a vested interest in an award of punitive damages immediately upon the entry of a verdict," *MAN AG*, 179 P.3d at 680, the nature of that interest was very different from that of the Oregon Supreme Court's definition of vested interest.

Indeed, although the *MAN AG* court stated that "when the court entered the jury's verdict," the State gained "a vested right to 60 percent of the jury's award of punitive damages,"

---

[7]In *Engquist v. Oregon Department of Agriculture*, 478 F.3d 985 (9th Cir. 2007), *aff'd*, 128 S. Ct. 2146 (2008), we did observe that "[t]he statute's express language, which invites the State to act only '[u]pon the entry of a verdict including an award of punitive damages,' belies any inference that the State is required to become a party. . . . Therefore, we conclude that Oregon is entitled to assert this substantive right without becoming a party." *Id.* at 1001 (quoting OR. REV. STAT. § 31.735) (second brackets in the original).

the court clarified immediately afterward that the State's "status as a judgment creditor . . . gives it the ability to enforce the judgment." *Id.* at 681. Even in this formulation, it is only the existence of a judgment that can give substance to the State's status as judgment creditor. *MAN AG* tells us very little about what powers the State has prior to the entry of a judgment.

The legislative history[8] of the 1995 amendment is helpful in determining the broad outlines of legislative intent, but it is not very useful in interpreting the specific details at issue here. The only legislative history that has been presented to the court is in the form of two statements quoted in the *MAN AG* opinion. One legislator stated:

> I heard Attorney General Kulongoski describe that in some situations after a verdict is reached that maybe the parties go back and rework the settlement * * *. The state's interest in these awards sometimes is defeated by some maneuvering that seems to enrich and maybe even more than — windfall might be kind of a gentle phrase to describe the activity but it seems like maybe the plaintiff and their lawyer come out a lot better than perhaps they should.

*MAN AG*, 179 P.3d at 680 (quoting Tape Recording, *S. Judiciary Subcomm. on Civil Process*, S.B. 482, Tape 28, Side A (Or. 1995) (Statement of Randy Miller)) (alteration in original). A representative of the bill's sponsor made a similar statement:

---

[8]A court in construing an Oregon statute may consider legislative history offered by one of the parties, and should "give the weight to the legislative history that the court considers to be appropriate." OR. REV. STAT. § 174.020(3). Under the Oregon Supreme Court's recent decision in *State v. Gaines*, 206 P.3d 1042, 1050-51 (Or. 2009), a court may consider legislative history regardless of whether a statute is ambiguous.

The Attorney General's right does not vest until after the judgment is entered. And so if the parties are smart and if there is a large punitive damages award entered, the parties will sit down and construct a * * * settlement which will provide that no final judgment will be awarded or that they will stipulate to a final judgment that will provide an award of general damages of a certain amount. And parties do that quite often, by the way, because they like to avoid the expense of appeal potentially. But they can under the present statute in essence cut out the Attorney General from that portion of the award because again, the Attorney General does not have the right to intervene until the judgment is entered.

*Id.* at 680-81 (quoting Tape Recording, *S. Judiciary Subcomm. on Civil Process*, S.B. 482, Tape 28, Side A (Or. 1995) (Statement of John DiLorenzo)) (alteration in original).

It is clear enough from these statements that legislators were concerned with preventing parties from colluding to deprive the State of its share of a punitive damages award. But the two statements do not indicate what powers the State would have to prevent collusive settlements which cut out the State's interest. Not all settlements that do away with punitive-damages awards represent cynical attempts to carve up the State's portion of an award. A plaintiff may be willing to give up most or all of a punitive damages award in a belief that the court will never approve the full amount of the jury's verdict. In the current case, for example, if Patton believed that the trial court might grant judgment as a matter of law in favor of Target, or even a substantial remittitur, he might have been willing to settle his claim for $84,950, and thus give up his own claim to punitive damages along with the State's, in order to be sure of receiving the full value of the compensatory damages without the delay and uncertainty involved in an appeal.

The legislature might reasonably have believed that this type of settlement was not as offensive as one in which the parties divided up the State's share of the punitive damages for themselves. The legislature might also have concluded that the State's interests would be adequately protected as long as it had an opportunity to intervene and state its objections, even if the court retained the power to approve a settlement in spite of the objections. The legislative history presented to the court is insufficient to rule out either of these possibilities.

These questions are central and unavoidable in deciding the current case. Yet any answers we might provide would be, at best, only our gloss on the text of the statute and reflect only our reading of the legislative history. If the district court's interpretation of the split-recovery statute — that the State does not become a judgment creditor until the entry of a judgment — violated a principle of statutory interpretation because it ignored the 1995 amendment to the statute and "omit[ted] what ha[d] been inserted," it could be argued that the State's proposed interpretation violates the same principle in the opposite way: it "insert[s] what has been omitted." OR. REV. STAT. § 174.010. In short, there are more than one reasonable interpretations of the statute.

Rather than attempt to resolve this conundrum ourselves, we believe it is the more prudent course to certify the question to the Oregon Supreme Court. This case meets the statutory criteria for certification because it involves a determinative question of state law for which there is no controlling precedent. *See* OR. REV. STAT. § 28.200. The Oregon Supreme Court is also likely to find that the case meets the criteria the court has established for exercising its discretionary power to accept certified questions. *See W. Helicopter Servs., Inc. v. Rogerson Aircraft Corp.*, 811 P.2d 627, 631-34 (Or. 1991). In particular, the Oregon Supreme Court suggested that it believes the question presented here is important when it granted review of the Oregon Court of Appeals' decision on

a similar issue. *See MAN Aktiengesellschaft v. DaimlerChrysler AG*, 189 P.3d 749 (Or. 2008). The parties there, however, reached a settlement before the court rendered its decision. *See* Brent Hunsberger, *State Drops Old Dispute on Daimler Judgment*, THE OREGONIAN, Apr. 4, 2009, at B7.

Because this case turns on an open question of Oregon law, our resolution would not be authoritative, and would represent only a prediction of how the Oregon Supreme Court would rule. *See Chale v. Allstate Life Ins. Co.*, 353 F.3d 742, 745 (9th Cir. 2003). By certifying a question in this case, assuming an affirmative response, we, as well as the Oregon Bar and the lower courts, will have the benefit of an authoritative decision on this issue.

## CONCLUSION

For the reasons described above, we respectfully certify to the Oregon Supreme Court the following question under Oregon law:

> When a jury has returned a verdict that includes an award of punitive damages under Oregon law, is the State of Oregon's consent necessary before a court may enter a judgment giving effect to any settlement between the parties that would result in a reduction or elimination of the punitive damages to which the State would otherwise be entitled under Oregon Revised Statutes § 31.735?

We respectfully ask the Oregon Supreme Court to exercise its discretionary authority under Oregon's Uniform Certification of Questions of Law Act, OR. REV. STAT. §§ 28.200 - .255, to accept and decide this question. Our phrasing of the question should not restrict the court's consideration of the issues involved. We acknowledge that "[t]he court may reformulate the relevant state law questions as it perceives them to be, in light of the contentions of the parties," *Toner ex rel.*

*Toner v. Lederle Labs.*, 779 F.2d 1429, 1433 (9th Cir. 1986), and "[w]e agree to abide by the decision of the Oregon Supreme Court," *Doyle v. City of Medford*, 565 F.3d 536, 544 (9th Cir. 2009). If the court decides that the question presented in this case is inappropriate for certification, or if it declines the certification for any other reason, we will resolve the question according to our best understanding of Oregon law.

The Clerk will file a certified copy of this Order with the Oregon Supreme Court under Or. Rev. Stat. § 28.215. In the meantime, this appeal is withdrawn from submission and will be resubmitted for decision following receipt of the Oregon Supreme Court's Opinion on the question certified or its rejection of the same. This panel retains jurisdiction over further proceedings in this court. The parties will notify the Clerk within ten days after the Oregon Supreme Court accepts or rejects certification, and again within ten days after the court renders its Opinion.

**IT IS SO ORDERED.**

---

HARRY PREGERSON
United States Circuit Judge, Presiding

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON REUTERS/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2009 Thomson Reuters/West.