On certified question from United States Court of Appeals for the Ninth Circuit; certification order dated September 2, 2009; certification accepted October 7, 2009; argued and submitted June 8, certified question answered November 12, 2010

## James PATTON,
*Plaintiff,*

*v.*

## TARGET CORPORATION,
*Defendant,*

*v.*

## STATE OF OREGON,
*Plaintiff-Intervenor.*

## (USCA 08-35177; SC S057752)

242 P3d 611

Rolf C. Moan, Supreme Court Coordinator, Office of the Attorney General, Salem, argued the cause and filed the brief for plaintiff-intervenor. With him on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Michael A. Griffin, of Jackson Lewis LLP, Seattle, argued the cause and filed the brief for defendant. With him on the brief was John M. Cowden. Lori Irish Bauman, of Ater Wynne LLP, Portland, for plaintiff James Patton, adopted the brief of Michael A. Griffin.

Jennifer J. Middleton, of Chanti & Middleton, PC, Eugene, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

GILLETTE, J.

## GILLETTE, J.

This case is before the court on a certified question of Oregon law from the United States Court of Appeals for the Ninth Circuit. *See Patton v. Target Corp.*, 580 F3d 942 (9th Cir 2009) (certifying question); ORS 28.200 - 28.255 (granting authority to answer certified questions and describing procedure). Plaintiff Patton sued his employer, defendant Target, in the United States District Court for the District of Oregon for wrongful discharge, alleging that Target demoted and later fired him because of his service in the National Guard. Patton alleged that Target's acts violated both federal and state law. A jury found in Target's favor on Patton's federal claim, but in Patton's favor on his state law claim. The jury awarded Patton approximately $85,000 in compensatory damages and $900,000 in punitive damages. Under ORS 31.735, set out *post*, the state would be entitled to 60 percent of any eventual punitive damages payment.

After the verdict was rendered, but before judgment was entered in the case, Patton and Target reached a settlement and jointly moved the court to approve a stipulated judgment dismissing the case. The terms of the settlement have not been disclosed, but it is undisputed that the settlement does not include any payment for punitive damages and, hence, there is no provision in the settlement for any payment to the state. The state moved to intervene in the case in order to object to the stipulated final judgment. The state argued that the settlement was reached without regard to the state's interest in a share of the punitive damages award under ORS 31.735(1), which provides that, "[u]pon the entry of a verdict including an award of punitive damages, the Department of Justice shall become a judgment creditor as to the punitive damages portion of the award." The court granted that motion, concluding that the state had a significant protectable statutory interest, but did not make a ruling as to the nature and scope of that interest under ORS 31.735.

The state then filed a complaint in intervention. There, the state argued that it had a vested interest in 60 percent of the jury's punitive damages award, that the parties therefore were precluded from settling the case without its consent, and that the court should reject the settlement. The

district court ultimately held that the state did not have a vested or enforceable property right in any punitive damages award until a final judgment was entered awarding such damages, and, therefore, the state's consent to a settlement was not required. *Patton v. Target Corp.*, No 03-CV-1722-BR, WL 361201 (D Or, Feb 8, 2008). For that reason, the court granted the original parties' motion to approve the stipulated judgment and it dismissed the complaint with prejudice. *Id.* The state sought reconsideration, and the district court affirmed its earlier decision.

The state appealed the district court's ruling to the Ninth Circuit, arguing that, under ORS 31.735(1), the state became a judgment creditor upon the entry of a verdict— before the entry of a judgment—and, therefore, the state's consent was required for any settlement that would reduce or eliminate the state's share of punitive damages awarded by the verdict. The Ninth Circuit concluded that ORS 31.735 did not clearly indicate what powers the legislature intended the state to possess as a prejudgment "judgment creditor," and that the correct interpretation of ORS 31.735 was an important and unanswered question of Oregon law that would be dispositive in the case. *Patton*, 580 F3d at 947-48. Accordingly, the Ninth Circuit certified to this court the following question:

> "When a jury has returned a verdict that includes an award of punitive damages under Oregon law, is the State of Oregon's consent necessary before a court may enter a judgment giving effect to any settlement between the parties that would result in a reduction or elimination of the punitive damages to which the State would otherwise be entitled under Oregon Revised Statutes § 31.735?"

580 F3d at 948-49. This court accepted the certified question.

We begin, as usual, by considering the text and context of the statute at issue. Since 1987, Oregon has had a "split recovery" statute that requires that a part of any punitive damages award be paid into the state's crime victim compensation account. In its current iteration, that statute is codified at ORS 31.735 and provides:

> "(1) Upon the entry of a verdict including an award of punitive damages, the Department of Justice shall become

a judgment creditor as to the punitive damages portion of the award to which the Criminal Injuries Compensation Account is entitled pursuant to paragraph (b) of this subsection, and the punitive damage portion of an award shall be allocated as follows:

"(a)   Forty percent shall be paid to the prevailing party. The attorney for the prevailing party shall be paid out of the amount allocated under this paragraph, in the amount agreed upon between the attorney and the prevailing party. However, in no event may more than 20 percent of the amount awarded as punitive damages be paid to the attorney for the prevailing party.

"(b)   Sixty percent shall be paid to the Criminal Injuries Compensation Account of the Department of Justice Crime Victims' Assistance Section to be used for the purposes set forth in ORS chapter 147. However, if the prevailing party is a public entity, the amount otherwise payable to the Criminal Injuries Compensation Account shall be paid to the general fund of the public entity.

"(2)   The party preparing the proposed judgment shall assure that the judgment identifies the judgment creditors specified in subsection (1) of this section.

"(3)   Upon the entry of a verdict including an award of punitive damages, the prevailing party shall provide notice of the verdict to the Department of Justice. In addition, upon entry of a judgment based on a verdict that includes an award of punitive damages, the prevailing party shall provide notice of the judgment to the Department of Justice. The notices required under this subsection must be in writing and must be delivered to the Department of Justice Crime Victims' Assistance Section in Salem, Oregon within five days after the entry of the verdict or judgment.

"(4)   Whenever a judgment includes both compensatory and punitive damages, any payment on the judgment by or on behalf of any defendant, whether voluntary or by execution or otherwise, shall be applied first to compensatory damages, costs and court-awarded attorney fees awarded against that defendant and then to punitive damages awarded against that defendant unless all affected parties, including the Department of Justice, expressly agree otherwise, or unless that application is contrary to the express terms of the judgment.

"(5) Whenever any judgment creditor of a judgment which includes punitive damages governed by this section receives any payment on the judgment by or on behalf of any defendant, the judgment creditor receiving the payment shall notify the attorney for the other judgment creditors and all sums collected shall be applied as required by subsections (1) and (4) of this section, unless all affected parties, including the Department of Justice, expressly agree otherwise, or unless that application is contrary to the express terms of the judgment."

The state argues that subsection (1) of ORS 31.735, which makes the Department of Justice a "judgment creditor" at the time that a verdict is entered, clearly demonstrates that the legislature intended to give the state a protected interest in its share of the punitive damages award. The state acknowledges that the text of subsection (1) creates some ambiguity about the *extent* of the rights that the state possesses at that point, but argues that the legislative history makes it plain that the legislature intended to prevent parties from entering into post-verdict settlements that reduce or eliminate the state's share of a punitive damages award without its consent. Patton and Target, for their part, contend that, in common understanding and under applicable statutory definitions of the key terms in ORS 31.735, the notion of a "judgment creditor" is meaningless before a judgment has been entered and, even if the legislature intended to give the state the rights of a judgment creditor before a judgment has been entered, going so far as to include a right to block a settlement that did not protect its rights, the legislature failed to express that intent in the words of ORS 31.735.

It is helpful to begin our analysis of ORS 31.735 by examining the historical development of that statute. As noted, the legislature created the split recovery scheme in 1987, making it part of chapter 18, dealing with judgments.[1] Or Laws 1987, ch 774, § 3. At that time, *former* ORS 18.540 (the original split recovery statute) provided, simply, that half of any part of a punitive damages award remaining after the plaintiff's attorney was paid was to be paid to a state

---

[1] In 2003, *former* ORS 18.540 was moved to a newly created chapter—chapter 31—and renumbered as ORS 31.735.

crime victim compensation fund.[2] Subsequently, in 1990, the Court of Appeals held, in *Eulrich v. Snap-On Tools Corp.*, 103 Or App 610, 613, 798 P2d 715 (1990), that, under that statute, the state had no right to any part of a punitive damages award until a fund that was capable of distribution was created. In 1991, and apparently in response to that holding, the legislature amended *former* ORS 18.540 to add the following, among other provisions:

> "Upon the entry of a judgment including an award of punitive damages, the Department of Justice shall become a judgment creditor as to the punitive damages portion of the award * * *."[3]

Or Laws 1991, ch 862, § 1.

The phrase "judgment creditor" was not defined in the statute in 1991, nor is it today.[4] However, there is no indication that, at the time of the 1991 amendments, the legislature intended that phrase to be understood other than according to its common and usual meaning—that is, as a term that was intrinsically dependent on the existence of a judgment. At that time, *Black's Law Dictionary* defined "judgment" as the

> "final decision of the court resolving the dispute and determining the rights and obligations of the parties. The law's last word in a judicial controversy, it being the final determination by a court of the rights of the parties upon matters submitted to it in an action or proceeding."

---

[2] *Former* ORS 18.540 (1987) provided:

"The punitive damage portion of an award shall be distributed as follows:

"(1) The attorney for the prevailing party shall be paid the amount agreed upon between the attorney and the prevailing party.

"(2) One-half of the remainder shall be paid to the prevailing party.

"(3) One-half of the remainder shall be paid to the Criminal Injuries Compensation Account to be used for the purposes set forth in ORS chapter 147."

[3] *Former* ORS 18.540 (1991) also included provisions, among others, requiring the party preparing the proposed judgment to ensure that the judgment identified all judgment creditors, and requiring the prevailing party to provide notice of any judgment that included punitive damages to the Department of Justice. Or Laws 1991, ch 862, § 1.

[4] In fact, chapter 18 included no definitions whatsoever until 2003. Or Laws 2003, ch 576, § 1 (adding ORS 18.005, which sets out definitions).

*Black's Law Dictionary* 841-42 (6th ed 1990). "Judgment creditor" was defined as "[a] person in whose favor a money judgment is entered or a person who becomes entitled to enforce it." *Id*. at 844-45. Those concepts are consistent with the common understanding of the phrase "judgment creditor" today. *See Black's Law Dictionary* 921 (9th ed 2009) ("judgment creditor" is a person with "a legal right to enforce execution of a judgment for a specific sum of money"); *see also Webster's Third New Int'l Dictionary* 1223 (unabridged ed 2002) ("judgment creditor" is "creditor having a legal right to enforce execution of a judgment for a sum of money"). It also is consistent with later-enacted definitions of key words and phrases set out in ORS chapter 18. For example, chapter 18 defines the term "judgment" as follows:

> " 'Judgment' means the concluding decision of a court on one or more requests for relief in one or more actions, as reflected in a judgment document."

ORS 18.005(8). "Judgment document," in turn, is defined as "a writing in the form provided by ORS 18.038 that incorporates a court's judgment." ORS 18.005(9). In addition, "judgment remedy" is defined to include the "ability of a judgment creditor to enforce a judgment through execution." ORS 18.005(11)(a).

In 1995, the legislature again amended *former* ORS 18.540, changing the word "judgment" in the first sentence of subsection (1) to "verdict," so that that subsection provided that, "upon entry of a *verdict* including an award of punitive damages, the Department of Justice shall become a judgment creditor as to the punitive damages portion of the award." *Former* ORS 18.540(1) (1995) (emphasis added); Or Laws 1995, ch 688, § 1.[5] At that time, the legislature did nothing to

---

[5] In addition to that change, the 1995 amendment increased the state's share of the punitive damages award from 50 to 60 percent, *former* ORS 18.540(b) (1995); limited the amount of the punitive damages award that the prevailing party's attorney was entitled to receive, *former* ORS 18.540(a) (1995); and required the prevailing party to notify the Department of Justice of the entry of a verdict awarding punitive damages, *former* ORS 18.540(3) (1995). Or Laws 1995, ch 688, § 1. The 1995 amendment to subsection (3) actually erroneously required the prevailing party, on "entry of a verdict including an award of punitive damages," to "provide notice of the *judgment* to the Department of Justice." *Former* ORS 18.540(3) (1995) (emphasis added). That error was corrected in 1997. Or Laws 1997, ch 73, § 1. The 1997 version provided (and continues to provide):

signal that it intended to alter the common understanding of any term used in the statute. That is, without changing the definition of the word "judgment" or the phrase "judgment creditor," or otherwise clarifying through definitions or in some other way what it intended to accomplish, the legislature purported to make the state a judgment creditor upon entry of a verdict, before there is any judgment in a case.

The state suggests that, although chapter 18 *"generally* declares that 'judgment creditor' status is created by a judgment," the more "particular intent" to give the state rights at the time of a verdict reflected in chapter 31 renders "the more general provisions in chapter 18 * * * essentially irrelevant." (Emphasis in original.) That is, according to the state,

> "although chapter 18 * * * suggests that a 'judgment creditor' generally is a creditor whose entitlement to a debt is documented by a 'concluding' judgment, chapter 18 makes no effort to apply any such definition to ORS 31.735 or to any other provision outside of chapter 18. Similarly, nothing in ORS 31.735, and nothing in any other portion of chapter 31, purports to incorporate definitions from chapter 18. In short, nothing in chapter 18 suggests that the legislature was without authority to declare, via ORS 31.735, that the state becomes a 'judgment creditor'—as a matter of law—upon entry of a punitive-damages verdict."

That argument does not advance the state's position. As our description of the historical development of ORS 31.735 makes clear, at the time that the legislature made the state a "judgment creditor" upon entry of a judgment that included a punitive damages award in 1991, the split recovery statute was a part of chapter 18. As we explained above, although the definitions set out in ORS 18.005 were not part of chapter 18 in 1991 or 1995, those definitions are consistent with the common understanding of the relevant terms at that time. It

---

"Upon the entry of a verdict including an award of punitive damages, the prevailing party shall provide notice of the verdict to the Department of Justice. In addition, upon entry of a judgment based on a verdict that includes an award of punitive damages, the prevailing party shall provide notice of the judgment to the Department of Justice."

*Former* ORS 18.540(3) (1997).

is true that, when *former* ORS 18.540 was renumbered as ORS 31.735 in 2003, the legislature did not expressly make applicable the newly enacted definitions set out in ORS 18.005. However, it goes without saying that the mere fact that the split recovery statute was renumbered in 2003 and now is found in chapter 31 has no bearing on the intent of the legislature in 1991 or 1995, when it enacted the amendments at issue in this case.

■     Of course, the legislature is free to define words to mean anything that it intends them to mean, including defining words "in a manner that varies from a dictionary definition or common understanding." *Cook v. Workers' Compensation Department*, 306 Or 134, 143 n 5, 758 P2d 854 (1988) (for purposes of workers' compensation reimbursement, a nurse practitioner is a "doctor or physician" under applicable statute, which defined "doctor or physician" as person licensed to practice in the "healing arts"). The problem, however, is that the legislature never purported to expand or otherwise redefine the phrase "judgment creditor" when, in 1995, it changed the word "judgment" to "verdict" in *former* ORS 18.540(1), or in 2003, when *former* ORS 18.540 was renumbered.

■     The question before the court thus comes down to what it means for the state to be a "judgment creditor" before there is a judgment. The state concedes that it does *not* mean that the state has the right to execute on the verdict alone to collect its share of the punitive damages awarded by the jury—a right ordinarily associated with the status of judgment creditor. Indeed, collection at the time of the verdict would seem to be precluded by the fact that, under ORS 31.730, any award of punitive damages is subject to court review and reduction if the court determines, *inter alia*, that the amount is not within the range that a rational jury would be entitled to award, or that the defendant has taken reasonable remedial measures to prevent recurrence of the conduct that gave rise to the punitive damages award. *See* ORS 31.730(2) and (3) (so providing). It follows that, upon entry of a verdict, the state has, at most, an economic expectancy of 60 percent of whatever portion of punitive damages, if any, eventually is memorialized in a judgment. However, the statute is silent as to what rights a "judgment creditor" with such

an expectancy interest deriving from a verdict would have before entry of judgment.

The state further concedes that ORS 31.735 does not expressly define the extent of the state's rights as a prejudgment "judgment creditor," but it argues that the plain text of the statute does give the state a "protected interest" in 60 percent of a punitive damages award upon entry of a verdict.[6] And that "protected interest," the state asserts, means that the parties may not agree to settle a case in such a way as to reduce or eliminate the state's share of any punitive damages award. The problem with the state's position is that nothing in ORS 31.735(1)—where the "judgment creditor" status at issue in this case is created—speaks to, much less expressly requires the state's consent to, a settlement. By contrast, subsections (4) and (5) each provide that certain actions may not be taken "unless all affected parties, including the Department of Justice, expressly agree otherwise."[7]

---

[6] The state has abandoned the argument, which it made in the federal district court, that it has a "vested" interest in its share of a punitive damages award. It was correct to do so. As this court explained in *DeMendoza v. Huffman*, 334 Or 425, 449, 51 P3d 1232 (2002), in the context of a discussion of the constitutionality of *former* ORS 18.540,

"The question is whether a vested property right in a punitive damages award can accrue *before* entry of a final judgment for the purposes of Article I, section 18. The answer is that it cannot."

(Emphasis in original.) As the court further stated,

" 'A vested right must be something more than a mere expectation based upon the anticipated continuance of existing laws; it must have become a title legal or equitable to the present or future enjoyment of property.' "

*Id., quoting Coshun v. Hurlburt et al.*, 102 Or 240, 243, 201 P 870 (1921).

[7] Subsection (4) provides:

"Whenever *a judgment* includes both compensatory and punitive damages, any payment on the judgment by or on behalf of any defendant * * * shall be applied first to compensatory damages, costs and court-awarded attorney fees awarded against that defendant and then to punitive damages awarded against that defendant unless all affected parties, including the Department of Justice, expressly agree otherwise * * *."

(Emphasis added.) Similarly, subsection (5) provides:

"Whenever any judgment creditor *of a judgment* which includes punitive damages governed by this section receives any payment *on the judgment* by or on behalf of any defendant, the judgment creditor receiving the payment shall notify the attorney for the other judgment creditors and all sums collected shall be applied as required by subsections (1) and (4) of this section, unless all affected parties, including the Department of Justice, expressly agree otherwise * * *."

(Emphasis added.)

In our view, that contrast prevents us from reading the wording in subsection (1) as making the state's consent a prerequisite to any post-verdict settlement between the parties.

■      As noted above, however, the state contends that, to the extent that its rights as a prejudgment "judgment creditor" under ORS 31.735 remain undefined after an examination of the text of that statute, the legislative history fleshes out the nature of its protected interest.[8] The legislative history that the state asserts to be compelling was quoted at length in a recent Court of Appeals opinion, *MAN Aktiengesellschaft v. DaimlerChrysler AG*, 218 Or App 117, 179 P3d 675 (2008), *rev dismissed*, 346 Or 214 (2009). In particular, the state points to certain statements made to a committee of the 1995 legislature. First, with respect to the proposed amendment to change, among other things, the word "judgment" to "verdict" in *former* ORS 18.540(1), Senator Miller commented,

> " 'I heard Attorney General Kulongoski describe that in some situations after a verdict is reached that maybe the parties go back and rework the settlement * * *. The State's interest in these awards sometimes is defeated by some maneuvering that seems to enrich and maybe even more than—windfall might be a kind of a gentle phrase to describe the activity but it seems like maybe the plaintiff and their lawyer come out a lot better than perhaps they should.' "

*MAN Aktiengesellschaft*, 218 Or App at 128, *quoting* Tape Recording, Senate Judiciary Subcommittee on Civil Process, SB 482, Feb 27, 1995, Tape 28, Side A (statement of Randy Miller). In addition, John DiLorenzo, a spokesperson for the sponsor of the amendment, testified the same day as follows:

---

It is also noteworthy that, as the emphasized wording above highlights, the state's express consent only is required when there is a judgment in the case—that is, a time when a "judgment creditor" ordinarily has rights.

[8] Under ORS 174.020(3), the court may consider legislative history to the extent it deems appropriate to assist in its construction of a statute. *See State v. Gaines*, 346 Or 160, 166, 206 P3d 1042 (2009) (construing ORS 174.020 to that effect). Accordingly, we consider the legislative history that the state has presented to us in this case. *Id.* (court may limit its consideration of legislative history to the information provided by the parties; court need not independently research legislative history).

> " 'The Attorney General's right does not vest until after the judgment is entered. And so if the parties are smart and if there is a large punitive damages award entered, the parties will sit down and construct a * * * settlement which will provide that no final judgment will be awarded or that they will stipulate to a final judgment that will provide an award of general damages of a certain amount. And parties do that quite often, by the way, because they like to avoid the expense of appeal potentially. But they can under the present statute essentially cut out the Attorney General from that portion of the award because again, the Attorney General does not have the right to intervene until the judgment is entered.' "

*Id.* (statement of John DiLorenzo). Finally, DiLorenzo also made the following statement:

> "I don't think you can discount too much * * * what happens to parties when the verdict comes in and before judgment is rendered. There is a real incentive for both parties to settle the case and to change the judgment around a little bit so that the Attorney General does not take half of whatever is available."

Tape Recording, Senate Judiciary Subcommittee on Civil Process, SB 482, Feb 27, 1995, Tape 27, Side B.

■ Although the comment of a single legislator at one committee hearing generally is of dubious utility in determining the intent of the legislature in enacting a statute (and the comment of a nonlegislator witness even less helpful),[9] we can agree that those passages clearly describe a problem that the legislature appears to have been attempting to address: Under the 1991 version of the statute, the parties to litigation sometimes eliminated the state's potential interest in a punitive damages award by settling the case before a judgment was entered. The passages quoted above do speak directly about the state's interest in a punitive damages award being "defeated" and the parties sometimes achieving

---

[9] *See Thompson v. IDS Life Ins. Co.*, 274 Or 649, 652-53, 549 P2d 510 (1976) (whether or not comment before legislative committee could be construed as favoring one interpretation of statute, "it is only the comment of one individual and of little or no help in determining legislative intent"); *State v. Guzek*, 322 Or 245, 260, 906 P2d 272 (1995) (nonlegislator's statements say little about the intent of the Oregon Legislative Assembly as a whole).

a "windfall." However, that legislative history does not disclose how the legislature intended to solve that problem. The state's argument, essentially, is that the legislature clearly intended to give the state *some* right that it did not have before the amendment, and because, in the state's view, the best way to address the legislature's clear concern over collusive settlements was to give the state the right to block all settlements, then that right must be what the legislature intended to confer.

The problem, however, is that there is an unbridged gap between what the legislature is said to have intended and what the words that the legislature chose to use actually do: The statute simply does not create any right or rights in the state as a prejudgment "judgment creditor" to accomplish that possible objective. Moreover, even assuming, *arguendo,* that the legislative history showed that the legislature did intend to enable the state to block parties from settling without its consent by bestowing "judgment creditor" status on the state upon entry of a verdict that includes punitive damages, the method that the legislature chose—changing the word "judgment" to "verdict" in subsection (1)—failed to "translate [that] intent into operational language" to accomplish that goal. *Monaco v. US Fidelity & Guar.*, 275 Or 183, 188, 550 P2d 422 (1976). The court is "not at liberty to give effect to any supposed intention or meaning in the legislature, unless the words to be imported into the statute are, in substance at least, contained in it." *Whipple v. Howser*, 291 Or 475, 480, 632 P2d 782 (1981) (internal quotation marks and citations omitted). As we have discussed, the statute does not provide that the state's consent to a settlement is required, although it does plainly require the state's consent to the application of payments made by or on behalf of a defendant after judgment. ORS 31.735 (4) and (5). Thus, even if the legislative history clearly suggested that the 1995 amendment was intended to require the state's consent to settlement, "the words to be imported into the statute" are not, in substance, contained in it.

In this case, it simply is not possible for us to conclude that ORS 31.735 as presently worded makes the state's consent necessary before a court may enter a judgment giving effect to a settlement between the parties that would

reduce or eliminate punitive damages to which the state otherwise would be entitled, even if that is what the legislature intended. The answer to the certified question is "no."

The certified question is answered.