Tuan Ahn TRAN,
*Petitioner,*

*v.*

BOARD OF CHIROPRACTIC EXAMINERS,
*Respondent.*

Board of Chiropractic Examiners
20072006, 20063006, 20071012;
A147147

300 P3d 169

Kendra M. Matthews argued the cause for petitioner. With her on the briefs was Ransom Blackman LLP.

Carolyn Alexander, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Duncan, Presiding Judge, and Haselton, Chief Judge, and Rasmussen, Judge pro tempore.

DUNCAN, P. J.

## DUNCAN, P. J.

The State Board of Chiropractic Examiners (board) found that petitioner had committed more than 800 violations of the provisions of ORS chapter 684, which governs the practice of chiropractic, and imposed a civil penalty of $201,250. Petitioner seeks judicial review of the board's order, arguing that the board lacks the power to discipline him because he never applied for or received a license to practice chiropractic in Oregon. Petitioner also argues that the board may not impose a civil penalty of more than $10,000 in a single disciplinary proceeding regardless of the number of violations committed. We conclude that the board has the power to discipline petitioner and to impose a fine of up to $10,000 per violation of the provisions of ORS chapter 684. Accordingly, we affirm.

We begin with the facts found by the board, which petitioner does not dispute. From 2003 to 2008, petitioner, who was never licensed by the board and never applied for a license, owned two "wellness" clinics and employed a licensed chiropractor, Warner, who believed that petitioner was a licensed naturopathic physician.[1] Petitioner examined and treated numerous patients, forged Warner's name on patients' charts, insurance forms, and other medical forms, and ordered x-rays in Warner's name.

In 2008, the board proposed a civil penalty of $226,500 against petitioner for that conduct. Petitioner requested a hearing. Before his hearing, petitioner moved for summary determination on the basis that the board lacked authority to levy a civil penalty against him. An administrative law judge (ALJ) denied that motion. After a hearing before the ALJ, a limited rehearing, and review by the board, the board issued a final order imposing a civil penalty of $201,250 against petitioner.[2] The board explained the types of violations that petitioner had committed and the number of each type, as reflected in the following table:

---

[1] From 2003 to 2005, petitioner owned one clinic. In late 2005, petitioner opened a second clinic.

[2] After the first hearing, the ALJ concluded that petitioner had received insufficient notice of the majority of the allegations against him. The board issued a new notice to petitioner and, at the limited rehearing, neither party provided additional testimony.

| Violation | Number of Violations | Penalty per Violation | Total Penalty |
|---|---|---|---|
| Unlicensed practice on patients | 560 | $250 | $140,000 |
| Forged signatures on charts | 138 | $250 | $34,500 |
| Forged Medicare and Medicaid Forms | 83 | $250 | $20,750 |
| Fraudulent referrals | 19 | $250 | $4,750 |
| Forged signatures—insurance | 4 | $250 | $1,000 |
| Completing a work release form | 1 | $250 | $250 |

Petitioner seeks judicial review of the board's order, arguing that the relevant statutes demonstrate that the board may discipline only a licensee or an applicant for a license to practice chiropractic. He asserts that, because he was an unlicensed practitioner who never applied for a license, the board lacks authority to discipline him and the ALJ should have granted his motion for summary determination.

The board's authority derives from ORS chapter 684, in which the legislature has set out a comprehensive regulatory scheme for the practice of chiropractic. The board is charged with enforcement of the regulatory scheme and supervision of chiropractic practice. The most basic requirement of chapter 684 is that a practitioner of chiropractic be licensed: "Without first complying with the provisions of this chapter, no person shall * * * [p]ractice or attempt to practice chiropractic." ORS 684.015(1)(a); *see also* ORS 684.040 - 684.112 (governing licensing); ORS 684.020 (providing that, with exceptions not relevant here, "it is unlawful for any person to practice chiropractic in this state unless the person first obtains and maintains an active license, as provided in this chapter").

The legislature granted the board rulemaking authority that reflects its supervisory role over the practice of chiropractic. The board may adopt rules "[e]stablishing standards and tests to determine the moral, intellectual, educational, scientific, technical and professional quali-fications of applicants for licenses to practice in this state" and "[t]o enforce the provisions of [ORS chapter 684] and to exercise general supervision over the practice of

chiropractic within this state." ORS 684.155(1)(a), (b). The board's supervisory role also includes enforcement of the statutory scheme and the board's rules through several types of disciplinary action. The text of ORS 684.100(1) demonstrates the breadth of that authority. That section provides, in part, as follows:

"(1) The State Board of Chiropractic Examiners may refuse to grant a license to any applicant or may discipline a person upon any of the following grounds:

"(a) Fraud or misrepresentation.

"(b) The practice of chiropractic under a false or assumed name.

"(c) The impersonation of another practitioner of like or different name.

"* * * * *

"(p) Violation of any provision of this chapter or any rule adopted thereunder."

ORS 684.100(9) lists seven types of discipline that the board may impose:

"In disciplining a person as authorized by subsection (1) of this section, the board may use any or all of the following methods:

"(a) Suspend judgment.

"(b) Place the person on probation.

"(c) Suspend the license of the person to practice chiropractic in this state.

"(d) Revoke the license of the person to practice chiropractic in this state.

"(e) Place limitations on the license of the person to practice chiropractic in this state.

"(f) Impose a civil penalty not to exceed $10,000.

"(g) Take other disciplinary action as the board in its discretion finds proper, including assessment of the costs of the disciplinary proceedings."

Petitioner argues that, despite the text of ORS 684.100(1), which provides that the board may discipline "a person"

for "[v]iolation of any provision" of chapter 684, the board does not have authority over those persons who violate the provision prohibiting unlicensed practice.

Petitioner's argument regarding the scope of the board's disciplinary authority under ORS 684.100 presents a question of statutory interpretation. In interpreting a statute, our task is to discern the intent of the legislature. ORS 174.020(1)(a); *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). To determine what the legislature intended, we consider the text of a statute in context as well as any useful legislative history. *Gaines*, 346 Or at 172. Nevertheless, our reliance on legislative history is circumscribed by the words of the statute, "for it is not the intent of the individual legislators that governs, but the intent of the legislature as formally enacted into law[.]" *Id.* at 173. "[O]nce the meaning and application of a statute have been put before us, we have an obligation to correctly construe and apply that statute." *Wilson v. Tri-Met*, 234 Or App 615, 624, 228 P3d 1225, *rev den*, 348 Or 669 (2010); *see also Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997) ("In construing a statute, this court is responsible for identifying the correct interpretation, whether or not asserted by the parties.").

As explained below, based on the plain text of the statute, understood in the context of the comprehensive regulatory scheme, we conclude that the board may impose civil penalties against unlicensed practitioners of chiropractic like petitioner. Petitioner's arguments to the contrary, which are based on prior versions of the statute and on legislative history, do not persuade us that, contrary to the text, the statute does not grant the board that power.

We begin our analysis with the text and context of ORS 684.100. As set out above, chapter 684 provides that no person may practice chiropractic without first obtaining a license, ORS 684.015(1)(a), and the board has authority to "discipline a person" for "[v]iolation of any provision of this chapter," ORS 684.100(1)(p). Thus, the board "may discipline a person" for practicing chiropractic without a license.

If we were to attribute to "a person" the narrow definition that petitioner proposes—a licensee or an applicant—then the statute would prevent the board from disciplining unlicensed practitioners of chiropractic other than those who had applied for licensure. Consequently, it would prevent the board from imposing discipline for "violation of any provision of this chapter," ORS 684.100(1)(p), creating an inconsistency in the text of the statutory scheme. Thus, in order to give effect to the contents of subsection (1), "a person" must include an unlicensed practitioner. We now turn to petitioner's arguments to the contrary.

Petitioner contends that, were we to understand "a person" to mean "any person"—including someone with no link to the practice of chiropractic—the board could discipline any person for "[f]raud or misrepresentation." ORS 684.100(1)(a) But our interpretation of "a person" is not so broad. We do not hold that, in context, "a person" means "any person"; instead, we determine the meaning of "a person" by reference to its statutory context.[3] Looking to the enumerated bases for discipline—particularly ORS 684.100(1)(p)—and the rest of the regulatory scheme, it is clear that the proper subjects of the board's discipline include persons, like petitioner, who violate chapter 684 by practicing chiropractic without a license. For present purposes, we need not determine whether anyone else falls under the board's authority.

Petitioner also argues that prior versions of ORS 684.100 demonstrate that the legislature never intended to grant the board power to discipline unlicensed practitioners. The premise of petitioner's argument is that, historically, the text of ORS 684.100 unambiguously limited the board's authority to licensees and applicants for licenses. Petitioner contends that the textual changes to the statute since

_____

[3] ORS 174.100(5) provides that, "[a]s used in the statute laws of this state, unless the context or a specially applicable definition requires otherwise, * * * '[p]erson' includes individuals, corporations, associations, firms, partnerships, limited liability companies and joint stock companies." That definition is irrelevant to the question before us because there is no dispute about whether "a person," as used in ORS 684.100(1), includes only individuals or whether it also includes other entities. Instead, the question before us is whether ORS 684.100(1) refers to persons—individual or corporate—*who are unlicensed practitioners*.

1971 reflect no legislative intention to expand the board's authority to include unlicensed practitioners. Furthermore, petitioner posits, the legislative history of those changes supports that conclusion. Consequently, petitioner reasons that we must conclude that the board's authority remains limited despite text that suggests broader authority.

In order to address petitioner's argument, we set out the history of the provision in some detail. In 1971, ORS 684.100(1) provided, "The board may refuse to grant a license to any applicant who desires to practice chiropractic in this state or may suspend or revoke such a license upon any of the following grounds: * * *."

In 1973, the legislature enacted what is now ORS 684.100(1)(p), which provided that one of the bases for the board's denial, suspension, or revocation of a license was "[v]iolation of any provision of this chapter or a rule enacted thereunder." Or Laws 1973, ch 265, § 1.[4]

In 1975, the legislature enacted ORS 684.100(9), which specified the methods by which the board could impose discipline:

"In disciplining a person as authorized by subsection (1) of this section, the board may use any or all of the following methods:

"(a)   Suspend judgment.

"(b)   Place him on probation.

"(c)   Suspend his license to practice chiropractic in this state.

"(d)   Revoke his license to practice chiropractic in this state.

"(e)   Place limitations on his license to practice chiropractic in this state.

"(f)   Take such other disciplinary action as the board in its discretion finds proper, including assessment of the costs of the disciplinary proceedings."

---

[4] That provision was originally enacted as ORS 684.100(1)(s). In 1989, it was renumbered ORS 684.100(1)(q). Or Laws 1989, ch 892, § 7. Finally, it was renumbered ORS 684.100(1)(p) in 2009. Or Laws 2009, ch 756, § 50.

Or Laws 1975, ch 492, § 5. In 1979, the legislature amended that provision to substitute "a person" and "of the person" for "him" and "his" in ORS 684.100(9)(b) to (e). Or Laws 1979, ch 744, § 56.

In 1985, the Joint Committee on Sunset Review considered chapter 684 and received an extensive report on the history, practice, and regulation of chiropractic in Oregon. The report stated the following:

> "Under the law, persons providing chiropractic care must be licensed by the board. * * * Persons not licensed may not use the title 'chiropractor' or any abbreviation indicating they provide chiropractic care. The board's primary function is to enforce these standards and ensure that person providing chiropractic service abide by the law.

> "Board responsibilities include preparing and administering written and oral examinations, issuing licenses, and conducting investigations of alleged law violations. The board is authorized to suspend, revoke, refuse to renew, put licensees on probation, or place limitations on licensees for specified grounds. It may also require licensees to pass a competency examination or take any other disciplinary action it finds proper."

Testimony, Joint Committee on Sunset Review, HB 2264, Apr 15, 1985, Ex E at 5-7 (report of Kevin Elverum, Director of Legislative Research). In communications with the Joint Committee on Sunset Review, the board requested "that it be given the authority to levy civil penalties." *Id.* at 38-39.

The legislature granted the board that power by inserting new text into ORS 684.100(1) and (9):

> "(1)  The board may refuse to grant a license to any applicant, * * * may suspend or revoke such a license **or may impose a civil penalty not to exceed $1,000** upon any of the following grounds:

> "* * * * *

> "(s)  Violation of any provision of this chapter or a rule enacted thereunder.

> "* * * * *

> "(9)  In disciplining a person as authorized by subsection (1) of this section, the board may use any or all of the following methods:

"* * * * *

**"(f)   Impose a civil penalty not to exceed $1,000."**

Or Laws 1985, ch 354, § 5 (boldface designates new text).

Finally, the legislature amended ORS 684.100 again in 1991 to eliminate redundancies that had been created when the legislature added, and later amended, ORS 684.100(9). The legislature removed the text in the introduction to ORS 684.100(1) that listed some of the disciplinary actions that the board could take, because a full list of disciplinary actions appeared later in the provision:

> "The board may refuse to grant a license to any applicant[, *may suspend or revoke such a license or may impose a civil penalty not to exceed $1,000*] **or may discipline a person** upon any of the following grounds: * * *."

Or Laws 1991, ch 892, § 7 (brackets and italics designate deleted text, boldface designates new text). In 1991, the legislature also increased the maximum amount of a civil penalty from $1,000 to $10,000.[5] *Id.*

Petitioner's argument begins with the proposition that, under the 1971 version of ORS 684.100, the board had authority to discipline only a licensee or an applicant. We agree. At that time, the text of ORS 684.100(1) permitted the board to refuse to grant a license, to suspend a license, or to revoke a license on enumerated grounds. That text did not grant the board authority over unlicensed practitioners.

Petitioner's argument then jumps from that 1971 baseline—authority to discipline only a licensee or an applicant—to 1991, when the legislature inserted "or may discipline a person" in place of the text that referred to suspension or revocation of a license and civil penalties. Petitioner argues that, "[w]hen the legislature acted in 1991 to amend ORS 684.100(1), no other statutes or rules were enacted or amended in a manner that suggested the legislature intended to expand the scope of the Board's authority." Consequently, petitioner reasons, we should understand the 1991 Legislative Assembly's use of "a person" as

---

[5] ORS 684.100 has been amended four times since 1991, but none of those amendments is relevant to the issue here.

part of a nonsubstantive change to eliminate redundancy rather than as a substantive change that expanded the board's authority.

We agree with petitioner's contention that the context of the 1991 change suggests that it was not intended to expand the board's authority. However, petitioner is too hasty in jumping from the baseline meaning of the provision in 1971 directly to the 1991 amendment. As explained above, the legislature amended the statute several times in the interim. The textual changes that the legislature enacted during those years—specifically, those enacted in 1985— provided the board with authority to discipline unlicensed practitioners of chiropractic. Because the most persuasive evidence of the legislature's intent is "the words by which the legislature undertook to give expression to its wishes," *Gaines*, 346 Or at 171 (internal quotation marks omitted), we do not need independent evidence that legislators wished to expand the scope of the board's authority. The text of the statute demonstrates that intent.

As noted above, in 1985, ORS 684.100(1) was amended to provide,

"(1) *The board may* refuse to grant a license to any applicant, * * * may suspend or revoke such a license or may *impose a civil penalty* not to exceed $1,000 *upon any of the following grounds*:

"* * * * *

"(s) *Violation of any provision of this chapter* or a rule enacted thereunder."

(Emphases added.) That text provided the board with authority to impose civil penalties for violations of chapter 684. As discussed above, a "provision of this chapter" is— and was, in 1985—the prohibition on practicing chiropractic without a license. Thus, with the 1985 amendments, the legislature granted the board authority to impose a civil penalty for unlicensed practice.

Petitioner argues that another statute, ORS 684.105, provides context indicating that the legislature never intended to expand the board's disciplinary authority. That statute has not been amended since 1971, when it was first enacted. It provides:

"(1)   Where the State Board of Chiropractic Examiners proposes to refuse to issue a license, or proposes to revoke or suspend a license, opportunity for hearing shall be accorded as provided in ORS chapter 183 [the Administrative Procedures Act (APA)].

"(2)   Judicial review of orders under subsection (1) of this section shall be in accordance with ORS chapter 183."

ORS 684.105. Petitioner contends that, had the legislature ever intended to expand the scope of the board's disciplinary authority to include unlicensed practitioners, it also would have expanded the scope of ORS 684.105 to include unlicensed practitioners.[6]

It is true that the legislature never updated ORS 684.105 to accord with the broader authority that it granted to the board in the 1985 amendments. Nevertheless, we conclude that that discrepancy reflects a legislative oversight rather than a lack of legislative intent to expand the board's disciplinary authority.

As noted above, ORS 684.105 has not been amended since 1971, at which time the board's disciplinary authority was limited in two pertinent ways: First, the board lacked the power to impose civil penalties on anyone. Second, the board could discipline only applicants and licensees. The current text of ORS 684.105 retains both of those limitations. It makes a board proceeding subject to the APA only when the board "proposes to refuse to issue a license, or proposes to revoke or suspend a license."

Petitioner does not dispute that the 1985 amendments granted the board authority to impose civil penalties on applicants and licensees. But ORS 684.105 does not make proceedings imposing such penalties subject to the APA. The fact that the legislature failed to broaden ORS 684.105 to include some disciplinary proceedings that are indisputably within the board's authority convinces us that the current wording of ORS 684.105 does not indicate that, contrary to the text of ORS 684.100, the legislature did not intend to expand the board's authority to include unlicensed practitioners.

---

[6] Petitioner does not challenge the procedures applied in his case; he cites ORS 684.105 only to support his argument regarding the meaning of ORS 684.100.

Petitioner also argues that ORS 684.190(1) grants district attorneys the exclusive authority to enforce the prohibition on unlicensed practice. That provision states, "The district attorneys shall prosecute all persons charged with violation of any of the provisions of this chapter. The executive director of the State Board of Chiropractic Examiners, under the direction of the board, shall aid the district attorneys in the enforcement of this chapter."

We agree with petitioner that that provision grants enforcement power to district attorneys, but our reading of the text of ORS 684.100 demonstrates that that grant is not exclusive. Nothing in ORS 684.190(1) suggests the contrary. The provision allows prosecution for "violation of any of the provisions of this chapter." Nothing in the text distinguishes unlicensed practice—with regard to which petitioner argues the provision is exclusive—from any other "violation of * * * the provisions of this chapter"—with regard to which petitioner concedes that the provision is not exclusive. Furthermore, the text of ORS 684.190(1) mirrors the text of ORS 684.100(1)(p), suggesting, contrary to petitioner's argument, that the authority of the district attorneys to prosecute is coextensive with the authority of the board to discipline.[7]

---

[7] In his response to the board's memorandum of additional authorities, petitioner asserts that ORS 684.156, which was enacted in 2001, Or Laws 2001, ch 598, § 5, also supports his view of ORS 684.100. That statute provides:

"The lapse, suspension or revocation of a license issued under ORS chapter 684 by the operation of law or by order of the State Board of Chiropractic Examiners or by the decision of a court of law, or the voluntary surrender of a license by a licensee, shall not deprive the board of jurisdiction to proceed with any investigation of or any action or disciplinary proceeding against the licensee or to revise or render null and void an order of disciplinary action against the licensee."

Petitioner asserts that the board's proposed interpretation of ORS 684.100 renders that provision redundant because, "[i]f the Board has jurisdiction over *any* person, regardless of his or her status, jurisdiction would *not* divest when a license expired." (Emphasis in original.)

Our holding here, however, is directed toward a situation different from the one addressed by ORS 684.156. We conclude that ORS 684.100 provides the board with authority over an unlicensed practitioner—that is, someone who, at the time of the *violation* of chapter 684, is not licensed. ORS 684.156 provides jurisdiction over a person who, although he or she was licensed at the time of the violation, is no longer licensed at the time of the *disciplinary proceeding*. Consequently, our holding does not render ORS 684.156 redundant.

Finally, petitioner contends that legislative history demonstrates that the board lacks authority to discipline him. He cites the report considered by the Joint Committee on Sunset Review in 1985, quoted above, 254 Or App at 600, arguing that it demonstrates that the board's authority was limited to applicants and licensees. We agree that, up to the time of the 1985 amendment—that is, until after the report was researched and produced—the board's authority was so limited. However, as noted in the report, the board requested that the legislature amend ORS 684.100 to grant the board new disciplinary authority. The legislature did so, and, as explained above, the text of that change granted the board authority to impose civil penalties on unlicensed practitioners. That legislative action was consistent with both the board's request for the power to impose civil penalties and the report, which noted that "[p]ersons not licensed may not use the title 'chiropractor' or any abbreviation indicating they provide chiropractic care. *The board's primary function is to enforce these standards and ensure that persons providing chiropractic service abide by the law.*" Testimony, Joint Committee on Sunset Review, HB 2264, Apr 15, 1985, Ex E at 5-6 (emphasis added).

Finally, petitioner argues that testimony of the board's executive director regarding an amendment proposed in 1991 shows that the board lacks authority to impose a civil penalty on petitioner. At that time, at the request of the board, the legislature enacted a new provision enabling the board to take injunctive action against any person violating the provisions of chapter 684. That provision, now codified at ORS 684.155(3), provides as follows:

"Without the necessity of prior administrative proceedings or hearing and entry of an order or at any time during such proceedings if they have been commenced, [the board may] institute proceedings to enjoin the practice of any person operating in violation of this chapter."

Or Laws 1991, ch 892, § 10. Notably, that provision authorizes the board to seek an injunction for any violation of chapter 684; it is not limited to practice without a license.

The board's executive director explained in written testimony that that provision would "allow the Board to stop a person from practicing without a license. The Board now

has no jurisdiction over unlicensed persons who practice chiropractic." Testimony, House Committee on Business and Consumer Affairs, HB 2637, Mar 5, 1991, Ex O at 2-3. In her remarks, the executive director explained:

> "[A] doctor * * * might move here from another state. He might be licensed in that state but unlicensed in our state, opens a clinic and begins to practice. Well, currently, we have no jurisdiction because this person is an unlicensed person, or one of our licensees will allow the license to lapse and continue to practice. Currently, our statute only allows us at that point to go to the district attorney with this and make a criminal case out of it. We would like to have statutory language which would allows us to stop that, to enjoin the doctor from practicing[.]"

Tape Recording, House Committee on Business and Consumer Affairs, HB 2637, Mar 5, 1991, Tape 44, Side A at 224-34 (statement of Christie Joachim).

For two reasons, that legislative history does not change our conclusion. First, the relevant change to ORS 684.100 took place in 1985, not 1991. The belief of the board's executive director, a nonlegislator, in seeking a different statutory change six years later provides minimal guidance. *See DeFazio v. WPPSS*, 296 Or 550, 561, 679 P2d 1316 (1984) ("The views legislators have of existing law may shed light on a new enactment, but it is of no weight in interpreting a law enacted by their predecessors."); *see also Patton v. Target Corp.*, 349 Or 230, 242, 242 P3d 611 (2010) (noting that "the comment of a single legislator at one committee hearing generally is of dubious utility in determining the intent of the legislature in enacting a statute (and the comment of a nonlegislator witness even less helpful)").

Second, even if the testimony were relevant, it would not be persuasive because it does not clearly address the board's ability to impose civil penalties as opposed to the board's ability to stop unlawful practice. The executive director's statements about the board's "jurisdiction" appear broad. However, the ultimate request is for "statutory language which would allow us to stop [unlicensed practice], *to enjoin the doctor from practicing*." Tape Recording, House Committee on Business and Consumer Affairs, HB 2637,

Mar 5, 1991, Tape 44, Side A at 224-34 (statement of Christie Joachim) (emphasis added).

Furthermore, the text of the provision that the legislature enacted is inconsistent with petitioner's reading of the executive director's remarks in two ways. If the executive director's concern was that the board lacked any means by which to discipline unlicensed practitioners, then the text of the statute is underinclusive because it grants the board only one means by which to discipline them—injunctive action. By the same token, the text is overinclusive because it grants the board authority to seek an injunction for any violation of chapter 684—not just unlicensed practice. Thus, the text of the provisions suggests that the executive director's remarks may have been directed only toward the board's ability to *enjoin* unlicensed practice, not toward its ability to impose any discipline whatsoever. Consequently, the executive director's statement does not persuade us that the board lacks authority to impose civil penalties on unlicensed practitioners.

In his second assignment of error, petitioner posits that, if the board did have authority to impose a civil penalty on him, that penalty could not exceed a total of $10,000 because it was imposed in a single proceeding. As set out in greater detail above, 254 Or App at 596, ORS 684.100(1) provides that the board "may discipline a person upon *any* of the [enumerated] grounds[.]" (Emphasis added.) And, ORS 684.100(9)(f) provides, "In disciplining a person as authorized by subsection (1) of this section, the board may use any or all of the following methods: * * * Impose a civil penalty not to exceed $10,000." Petitioner contends that, "[b]ecause the statute does not specifically authorize a $10,000 maximum 'per violation' or 'for each offense,' * * * the maximum must be construed to apply to the single disciplinary proceeding [at issue here]." He cites several other statutes that authorize civil penalties in other contexts, all of which include statements specifying that the penalty is "for each offense" or "per violation". *See* ORS 260.995; ORS 672.690(1); ORS 673.400(2); ORS 674.850(1); ORS 671.995(1).

The text of ORS 684.100, however, demonstrates that the board may impose a penalty of up to $10,000 for each

violation of chapter 684. The civil penalty is a method that the board may use "[i]n disciplining a person as authorized by subsection (1) of this section." ORS 684.100(9)(f). Subsection (1) authorizes the board to "discipline a person upon any of the following grounds[.]" ORS 684.100(1). It proceeds to enumerate those grounds. Here, the board elected to discipline petitioner for 805 prohibited acts. For each of those acts, the board was entitled to "use any or all of the * * * methods" set out in ORS 684.100(9). Those methods include "[i]mpos[ing] a civil penalty not to exceed $10,000." ORS 684.100(9)(f). The board imposed a penalty of $250 for each prohibited act. That was within its power.

Affirmed.