# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**JAMES L. HOUGH**
Spangler, Jennings & Dougherty, P.C.
Merrillville, Indiana

ATTORNEYS FOR INTERVENORS:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**DAVID L. STEINER**
Deputy Attorney General

**KATHY BRADLEY**
Deputy Attorney General
Indianapolis, Indiana



FILED

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARK S. WEINBERGER, M.D., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 45A04-1107-CT-369 |
| | ) | |
| ESTATE OF PHYLLIS R. BARNES, Deceased, | ) | |
| By PEGGY HOOD, as Personal Representative, | ) | |
| JOE CLINKENBEARD, P.A., | ) | |
| | ) | |
| Appellees, | ) | |
| | ) | |
| STEPHEN W. ROBERTSON, Commissioner of | ) | |
| The Indiana Department of Insurance, and | ) | |
| THE STATE OF INDIANA, | ) | |
| | ) | |
| Appellees – Intervenors. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Diane Kavadias Schneider, Judge
Cause No. 45D01-0905-CT-64

**December 18, 2013**

**OPINION - FOR PUBLICATION**

**FRIEDLANDER, Judge**

In Indiana, Ind. Code Ann. § 34-51-3-6 (West, Westlaw current with all 2013 legislation) allocates the lion's share of punitive damage payments to the State. In this case, we must decide whether the statute empowers the State to intervene in otherwise private litigation, ostensibly to protect its interest in a punitive damage award. Concluding that I.C. § 34-51-3-6 confers no such authority, and acknowledging that the only proper parties to this litigation have reached a post-trial settlement agreement, we dismiss.

In September 2001, Phyllis Barnes was seen by Mark S. Weinberger, M.D., an ear, nose, and throat specialist (ENT). Barnes was seeking treatment for symptoms including coughing, hoarseness, and difficulty swallowing and breathing. Weinberger ordered a CT scan of Barnes's sinuses, which were shown to be clear and normal. Despite the absence of sinus disease, on October 11, 2001, Weinberger performed extensive and risky surgery on Barnes, removing all of her sinus cavities. Barnes continued to have difficulty breathing following the surgery and, after seeking further treatment from Weinberger to no avail, saw Dr. Dennis Han, another ENT. At Barnes's first appointment, Dr. Han diagnosed her with Stage IV laryngeal cancer. Based on Barnes's history and condition, Dr. Han believed that Barnes had had cancer for at least six to nine months and that there were clear indications of cancer at the time she saw Weinberger. Barnes underwent extensive treatment for her cancer, including chemotherapy, radiation, and numerous surgeries. Barnes was cured of laryngeal cancer, but suffered a recurrence in her lungs, leading to her death at the age of fifty.

Prior to her death, Barnes filed a proposed medical malpractice complaint with the Indiana Department of Insurance, which was amended to substitute the Estate as the plaintiff on June 5, 2008. On February 23, 2009, a medical review panel issued its unanimous opinion that Weinberger failed to comply with the applicable standard of care. Thereafter, on March 5, 2009, the Estate filed a complaint against Weinberger in the trial court.[1] A jury trial commenced on March 14, 2011 and lasted several days. On March 24, 2011, the jury returned a verdict against Weinberger in the amount of $3 million in compensatory damages and $10 million in punitive damages.

On April 1, 2011, Weinberger filed a motion for the entry of judgment pursuant to Ind. Trial Rule 58, in which he argued that Ind. Code Ann. § 34-18-14-3 (West, Westlaw current with all 2013 legislation) limited the Estate's total recovery to $1.25 million. Nevertheless, on April 14, 2011, the trial court entered judgment consistent with the jury's verdict. Weinberger then filed a motion to correct error, and following a hearing, the trial court reduced the judgment to $1.25 million in compensatory damages and $9 million in punitive damages based on its interpretation of I.C. § 34-18-14-3 and I.C. § 34-51-3-4 (West, Westlaw current with all 2013 legislation).

Both Weinberger and the Estate filed timely notices of appeal. On January 24, 2012, the Estate filed a motion to stay the appeal pending the preparation and signature of settlement documents, which this court granted. On May 22, 2012, the Estate filed a status

---

[1] The complaint also named Joe Clinkenbeard, P.A., as a defendant. The jury returned a verdict in Clinkenbeard's favor, and he does not participate in this appeal.

report indicating that the Estate and Weinberger had engaged in mediation and reached a settlement agreement, pursuant to which the Estate agreed to waive its interest in the punitive damages award. The Indiana Attorney General, however, asserted an interest in the punitive damages award pursuant to Indiana's punitive damage allocation statute, I.C. § 35-41-3-6. Because the State had not participated in appellate mediation or agreed to the settlement, the Estate asked this court to compel the Attorney General to mediate. This court granted the motion on July 6, 2012, ordering the Attorney General to participate in mediation pertaining to the State's interest in the award of punitive damages.

Thereafter, the Estate finalized settlement agreements with Weinberger and the Indiana Patients Compensation Fund (PCF),[2] but no agreement was reached with the State. On January 2, 2013, the Estate filed a motion to dismiss its appeal because it "had been amicably resolved and settled." On January 17, 2013, this court granted the Estate's motion to dismiss and ordered the Clerk to change the docket to show Weinberger as the appellant and the Estate as the appellee. The next day, the Estate and Weinberger filed a joint Stipulation to Vacate Compensatory Damage Judgment and to Dismiss Claim for Compensatory Damages. The Attorney General filed a response and objection, in which it indicated that it was "concerned that the Estate and Weinberger will claim that the vacation of the Compensatory Judgment eliminates any liability under the Punitive Judgment,

---

[2] Pursuant to Indiana's Medical Malpractice Act, any amount due under a judgment or settlement for malpractice in excess of the statutory limits on healthcare provider liability is paid by the PCF. Ind. Code Ann. § 34-18-14-2 (West, Westlaw current with all 2013 legislation).

4

including the State's $6,750,000 interest in the judgment."[3]  On February 6, 2013, this court issued an order holding the motion in abeyance to be ruled upon by the writing panel.  The Estate subsequently filed a notice of its intention not to file a brief and its agreement that both the compensatory and punitive damages judgments should be vacated.

Meanwhile, although the State had participated in mediation, it had not been granted permission to intervene or otherwise formally recognized as a party to this appeal.  Consequently, the State filed its Motion to Clarify Party Status or Alternative Motion to Intervene on March 7, 2013.[4]  This court granted the State permission to intervene as an appellee on March 26, 2013, and Weinberger filed a motion to reconsider, which this court denied.

In sum, Weinberger, the Estate, and the PCF have settled this matter, and if not for the State's intervention, this appeal would be at an end.  In his brief, Weinberger argues that the State's intervention was improper and raises a number of additional issues, all ultimately directed at undermining the punitive damages award.  In its brief, the State concedes that some of Weinberger's arguments "appear[] to be well taken."  *Appellee's Brief* at 8.  The only issues briefed by the State are whether it was properly allowed to intervene and the

---

[3] In a separate order handed down contemporaneously with this appeal, we grant Weinberger's motion for leave to file his Response to State of Indiana's Objection to Stipulation to Vacate Compensatory Damage Judgment and to Dismiss Claim for Compensatory Damages.  Additionally, the Estate and Weinberger's joint Stipulation to Vacate Compensatory Judgment and to Dismiss Claim for Compensatory Damages is accepted, and the State's objection thereto is denied.

[4] In his Supplemental Appellant's Appendix, Weinberger has included a response in opposition to the State's motion to intervene, in which he argues that the State's interest in the punitive damages award under I.C. § 34-51-3-6 does not confer a right to become a party to the litigation at any stage.  Although the response is file-stamped March 21, 2013, it is not noted on this court's electronic docket.  Thus, it is unclear to us whether this document was, in fact, filed on the date listed.

5

interpretation of the damages caps set forth in I.C. §§ 34-18-14-3 and 34-51-3-4. In order to resolve this appeal, we need address only the question of whether the State was properly permitted to intervene.

As an initial matter, we acknowledge that this court considered and granted the State's motion to intervene before this case was fully briefed and transferred to the writing panel. While we are reluctant to set aside this court's earlier rulings, we have the inherent authority to reconsider any such decision while the appeal remains *in fieri*. *Miller v. Hague Ins. Agency, Inc.*, 871 N.E.2d 406 (Ind. Ct. App. 2007). Accordingly, we may reconsider this court's preliminary ruling on the State's motion to intervene.

Intervention after the entry of judgment is disfavored, but permitted under extraordinary and unusual circumstances. *Valparaiso Technical Inst., Inc. v. Porter Cnty. Treasurer*, 682 N.E.2d 819 (Ind. Ct. App. 1997). The Indiana Appellate Rules, however, provide no mechanism for intervention once the matter has reached the appellate stage. *Treacy v. State*, 953 N.E.2d 634 (Ind. Ct. App. 2011), *trans. denied*. Further, App. R. 17(A), which provides that "[a] party of record in the trial court . . . shall be a party on appeal" has been read to limit the class of parties on appeal to the parties of record in the trial court. *Treacy v. State*, 953 N.E.2d 634. Based on this authority, Weinberger argues that intervention on appeal is prohibited. The State argues that denying it the opportunity to intervene on this basis would be inequitable because it was prevented from intervening in the trial court due to Weinberger's failure to comply with I.C. § 35-51-3-6(a), which requires the party against whom a punitive damage award is entered to notify the office of the Attorney

6

General. Weinberger responds that the statute provides no timeframe within which this notification must occur and that, in any event, the proper procedure would have been for the State to ask this court to hold this appeal in abeyance while it sought permission to intervene from the trial court.

We need not resolve the specific issue of whether intervention at the appellate level is permitted because we conclude that under I.C. § 35-51-3-6, the State is not permitted to intervene at any stage of the proceedings.[5] The State was not involved in the underlying incident. It had no rights or duties that were implicated in the physician/patient relationship between Barnes and Weinberger. The State has an interest in this matter only to the extent the legislature says it does. Thus, the statute creating and conferring status upon the State in punitive-damages cases is the sole repository of authority governing the State's participation in the litigation. Accordingly, we decline to look elsewhere, such as Ind. Trial Rule 24, to inform and supplement the limited rights conferred upon the State pursuant to I.C. § 34-51-3-6.

We are faced here with a question of statutory interpretation. In interpreting a statute, our first step is to determine whether the legislature has spoken clearly and unambiguously on the point in question; if so, no room exists for judicial construction. *Siwinski v. Town of Ogden Dunes*, 949 N.E.2d 825 (Ind. 2011). If a statute is susceptible to more than one

---

[5] Citing *State v. Doe*, 987 N.E.2d 1066 (Ind. 2013), the State notes that it has previously been granted permission to intervene to protect its interest in a punitive damage award. Although the Court noted in passing that the State had intervened before the trial court in *Doe*, the propriety of the State's intervention was not discussed in that case. Instead, the Court addressed only the constitutionality of the split-recovery statute and the punitive damages cap. Accordingly, that case provides no guidance here.

interpretation, however, it is deemed ambiguous and therefore subject to judicial construction. *City of N. Vernon v. Jennings Nw. Reg'l Utils.*, 829 N.E.2d 1 (Ind. 2005). Our primary goal in statutory construction is to determine and give effect to the intent of the legislature. *Id.* "The best evidence of that intent is the language of the statute itself, and we strive to give the words in a statute their plain and ordinary meaning." *State v. Oddi-Smith*, 878 N.E.2d 1245, 1248 (Ind. 2008). "Moreover, we view the statute within the context of the entire act rather than in isolation." *Ind. Family & Soc. Servs. Admin. v. Radigan*, 755 N.E.2d 617, 622 (Ind. Ct. App. 2001). "Further, we will not read into the statute that which is not the expressed intent of the legislature. As such, it is just as important to recognize what the statute does not say as it is to recognize what it does say." *N.D.F. v. State*, 775 N.E.2d 1085, 1088 (Ind. 2002) (citations omitted).

The split-recovery statute provides in relevant part as follows:

(b) When a punitive damage award is paid, the party against whom the judgment was entered shall pay the punitive damage award to the clerk of the court where the action is pending.

(c) Upon receiving the payment described in subsection (b), the clerk of the court shall:

(1) pay the person to whom punitive damages were awarded twenty-five percent (25%) of the punitive damage award; and

(2) pay the remaining seventy-five percent (75%) of the punitive damage award to the treasurer of state, who shall deposit the funds into the violent crime victims compensation fund established by IC 5-2-6.1-40.

(d) The office of the attorney general may negotiate and compromise a punitive damage award described in subsection (c)(2).

8

(e) The state's interest in a punitive damage award described in subsection (c)(2) is effective when a finder of fact announces a verdict that includes punitive damages.

I.C. § 34-51-3-6.

We pause here to note what the statute does *not* say. The statute does not provide for the entry of judgment in the State's favor or that the State becomes a party or judgment creditor at the time the verdict is announced, nor does it specifically provide for intervention by the State. Indeed, the statute is completely silent on the rights of the State, if any, to enforce a punitive damages judgment, and it does not provide that the State's consent is required if the litigants wish to enter into a post-trial settlement agreement eliminating such an award. Allowing the State to exert control over the litigation from the moment a punitive damages award is announced would fundamentally alter the legal landscape with respect to punitive damages. If the General Assembly intended to make such a sweeping change, it would have done so explicitly.

Turning now to what the statute *does* say, the parties seem to agree that the State's right, if any, to participate in the litigation emanates from subsection (e). This portion of the statute speaks of the State's "interest" in a punitive damage award becoming "effective" at the time the verdict is announced. But what is the nature of that interest? We believe the answer to this question can be found in the language of subsection (e) itself, which refers to the interest "described in subsection (c)(2)[.]" Subsection (c)(2) provides that upon receiving payment for a punitive damages award, the trial court clerk is obligated to forward seventy-five percent of that sum to the Treasurer. Thus, by the terms of the statute, the full extent of

9

the State's interest in a punitive damages award is in receiving seventy-five percent of any amount paid to the trial court clerk; the State is entitled to a portion of such an award only when and if it is actually paid, and the only entity with a duty directly to the State is the trial court clerk.[6] Thus, at the time a punitive damages verdict is announced, the State's interest can best be described as a mere expectancy, contingent on the future payment of the award and, in all respects, derivative of the plaintiff's right to receive payment. The award itself remains subject to being vacated, either as a result of an appeal or by agreement of the litigants.

Moreover, to the extent the language of I.C. § 35-51-3-6 might be considered ambiguous on these points, our conclusion is in keeping with its legislative purpose. A number of states have enacted statutes similar to I.C. § 35-51-3-6, which have come to be known as split-recovery or allocation statutes. Charles F.G. Parkinson, Note, *A Shift in the Windfall: An Analysis of Indiana's Punitive Damages Allocation Statute and the Recovery of Attorney's Fees Under the Particular Services Clause*, 32 Val. U. L. Rev. 923 (1998). These statutes were designed to combat problems associated with a perceived nationwide increase in the amount and number of punitive damages awards. *Id.* "The central purpose of punitive damages is to punish the wrongdoer and to deter him from future misconduct, not to reward the plaintiff and not to compensate the plaintiff." *Crabtree ex rel. Kemp v. Estate of*

---

[6] We reach a similar conclusion with respect to the import of subsection (d), which discusses the State's authority to compromise a punitive damages award "described in subsection (c)(2)." Because the only interest described in subsection (c)(2) is the State's right to receive seventy-five percent of any punitive damages award that is actually paid, subsection (d) refers only to the State's authority to agree to accept more or less than its seventy-five percent statutory share of that sum; we do not read subsection (d) as conferring on the State the authority to participate in post-trial settlement negotiations among the parties.

10

*Crabtree*, 837 N.E.2d 135, 139 (Ind. 2005). Punitive damages have long been criticized for a number of reasons, chief among them that such awards result in an unfair windfall recovery for plaintiffs who have already been made whole through an award of compensatory damages. Parkinson, *supra*; *see also State v. Doe*, 987 N.E.2d at 1069 (noting that "a principle that allows an individual to put the money assessed against another individual, as punishment or a warning example, into his private pocket when he is not entitled to it, whatever public advantages it may have, does not seem to be thoroughly sound" (quoting *Stewart v. Maddox*, 63 Ind. 51, 57 (1878)). Critics also argue that exorbitant punitive damage awards expose businesses to excessive liability and drive up insurance costs. *See* Catherine M. Sharkey, *Punitive Damages as Societal Damages*, 113 Yale L.J. 347 (2003).

As a result of these perceived pitfalls, punitive damages have often been the subject of tort-reform measures. *Id.* Many states have enacted statutory measures designed to rein in punitive damages, including caps on punitive damages and, less often, split-recovery statutes similar to I.C. § 34-51-3-6. Parkinson, *supra*. Split-recovery statutes are intended to discourage plaintiffs from bringing punitive damages claims by making them significantly less lucrative for the plaintiff and the plaintiff's attorney, and to decrease the plaintiff's windfall recovery where such claims are successfully brought. Sharkey, *supra.* Additionally, some states have recognized split-recovery statutes as revenue-raising measures, although this purpose has been described as "controversial." *Id.* at 376.

Indiana's split-recovery statute was passed in 1995 as part of a comprehensive tort-reform package, which "substantially modified existing law in the tort and products liability

11

fields." Andrew P. Wirick & Ann Marie Waldron Piscione, *Tort Law Reform (?) and Other Developments in Indiana Tort Law*, 29 Ind. L. Rev. 1097, 1097 (1997); *see also* Timothy C. Caress, *Recent Developments in the Indiana Law of Products Liability*, 29 Ind. L. Rev. 979, 995 (1996) (calling the 1995 enactment "[t]he most sweeping liability reform bill in Indiana's history, and one of the most comprehensive in the nation"). In addition to allocating seventy-five percent of punitive damage awards to the State, the Act capped such awards at three times the amount of compensatory damages, or $50,000, whichever is greater. I.C. § 34-51-3-4. In light of its passage as part of a comprehensive tort-reform package, it is apparent to us that the overarching goal of the split-recovery statute is to protect defendants from excessive punitive damage awards. Although the split-recovery statute has the effect of redirecting a portion of any punitive damages award into public coffers, we cannot conclude that the General Assembly's goal was to use punitive damage awards as a new revenue source. Put simply, the primary purpose behind the allocation statute is to combat perceived ills associated with the rising number of punitive damage awards. Allowing the State to insist on the payment of a punitive damage judgment that the litigants have agreed should be vacated would thwart this goal.

Additionally, our review of the legislative history of the statute suggests that subsection (e) was intended to serve a narrow, specific purpose. Subsection (e) was not part of the original allocation statute when it was enacted in 1995. *See* I.C. § 34-51-3-6 (West Supp. 1998). In *Cheatham v. Pohle*, 789 N.E.2d 467 (Ind. 2003), our Supreme Court upheld the original version of the split-recovery statute against a constitutional challenge. In

12

relevant part, the Court held that allocating a portion of a punitive damages award to the State was not an unconstitutional taking of private property because a plaintiff has no vested property right in a punitive damage award. Justice Dickson dissented, asserting that "[a] person's property interest in a judgment vests upon the entry of that judgment by the trial court, not upon the eventual payment of the judgment by the judgment debtor." *Id.* at 477. According to Justice Dickson, because the State's interest in the award did not accrue until after the entry of judgment in the plaintiff's favor, the allocation of a portion of the award to the State amounted to an unconstitutional taking.

In 2006, the General Assembly amended the split-recovery statute by adding, among other provisions, subsection (e). It therefore appears to us that by clarifying that the State's interest in the punitive damages award is "effective" at the time a punitive damages verdict is announced (i.e., before the entry of judgment), the General Assembly intended to remedy the potential takings problem Justice Dickson identified in his dissent in *Cheatham v. Pohle*. We see no indication that subsection (e) was intended to give the State the right to participate in the litigation or veto a post-trial settlement agreement, even if such a settlement eliminates a punitive damages award.

We note further that "Indiana strongly favors settlement agreements." *Georgos v. Jackson*, 790 N.E.2d 448, 453 (Ind. 2003). Indeed, this preference was specifically embodied in the 1995 tort reform package. *See* Ind. Code Ann. § 34-50-1-6 (West, Westlaw current with all 2013 legislation) (providing that if a recipient does not accept a "qualified settlement offer" and the final judgment is less favorable than the terms of the offer, the court

13

shall award attorney fees, costs, and expenses up to $1,000 to the offeror). Moreover, the policy favoring settlement is not limited to the pretrial phases of litigation; Ind. Appellate Rule 20 encourages the parties in civil cases to consider appellate mediation and empowers the appellate court to conduct or order appellate alternative dispute resolution. Allowing the State to intervene in cases involving punitive damages would seriously impair the prospects of post-trial settlement. The facts of this case exemplify the problem: the original parties to the litigation, along with the PCF, finalized a settlement agreement nearly a year ago—and if not for the State's involvement, a settlement might have been reached much earlier. Without the State's participation, this appeal would have been resolved at that time. Despite contributing nothing at the trial court level in order to help obtain the punitive damage award, the State has been permitted to prolong this appeal, causing the parties to continue to amass legal fees even after resolving their dispute.

We note, however, that it has been suggested that allowing the parties to reach a post-trial settlement under these circumstances could lead to collusion between plaintiffs and the defendants for the purpose of circumventing the operation of the applicable split-recovery statute. *See*, *e.g.*, *Patton v. Target Corp.*, 242 P.3d 611 (Or. 2010); *Sontag v. State*, 669 So.2d 283 (Fla. Dist. Ct. App. 1996). Specifically, a defendant and plaintiff may enter into a settlement agreement wherein the defendant agrees to pay the plaintiff an amount exceeding the sum of the compensatory damages awarded and the share of the punitive damages to which the plaintiff is entitled, but less than the defendant's total liability under the judgment, and by labeling the entire sum compensatory, prevent the State from collecting its share. It

should perhaps be noted that this does not seem to be the case here; according to the State, the Estate accepted compensatory damages from Weinberger and the PCF totaling approximately $1.72 million, an amount less than half of what the Estate was to receive under the trial court's judgment. But even assuming the compromise was motivated by such concerns, as we explained above, the goal of the split-recovery statute is to rein in punitive damage awards, not to provide a revenue source for the State. In any event, we must apply the statute as it is written; it is not our province to cure perceived defects as we see fit.

In sum, I.C. § 34-51-3-6 does not permit the State to become a party to otherwise private litigation at any stage of the proceedings, and we therefore reverse this court's prior order granting the State's motion to intervene. Because the only proper parties to this appeal have amicably resolved their dispute, there is nothing left for us to decide; accordingly, we dismiss. Upon petition by the parties, the trial court shall vacate the damages judgment against Weinberger.

Appeal dismissed.

BAKER, J., and VAIDIK, J., concur.

15